FILED

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## FORT MYERS, DIVISION

2009 DEC 31  AM 11: 45

U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS, FLORIDA

**K. A. DELAET, individually**
**NOEL CLARK, JR., individually and**
**B. LYNN CALLAWAY individually**
       **Plaintiffs**

**VS**                   **CASE #**

**CRAIG COFFEE as former**
**head of Desoto County Code Division**
**JORGE HERNANDEZ as head of**
**Desoto County Code division**
**LESTER HORNBAKE as head of**
**Desoto County Building and Zoning**
**CRAIG COFFEE individually**
**SHELIA SAPP individually**
**JORGE HERNANDEZ individually**
**LESTER HORNBAKE individually**
**KIMBERLY ROUTT individually**
**SANDRA GREEN individually**
**TOM SOUTH Individually**
**KEN KOHN Individually**
**RICK CAMTRELL individually, as acting director of Secretary of State**
**Department of Environmental Protection**

2: $09$ -c $\underline{V}$ - $841$ -FtM-29DNF

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs K. A. DeLaet individually hereinafter "DeLaet", Noel Clark, Jr.

individually hereinafter "Clark", and B. Lynn Callaway individually hereinafter

"Callaway" and hereby file this Complaint and Demand for Jury Trail, pursuant to

Federal Rules of Civil Procedure, against all the Defendants, Craig Coffee as former head

of Desoto County Code Division, hereinafter "Coffee official", Jorge Hernandez as head

of  Desoto County Code Division, Lester Hornbake as head of Desoto County Building

and Zoning hereinafter "Hornbake Official", Craig Coffee Individually hereinafter

1

"Coffee", Shelia Sapp Individually hereinafter "Sapp",  Jorge Hernandez Individually

Hereinafter "Hernandez", Lester Hornbake individually hereinafter "Hornbake",

Kimberly Routt Individually, hereinafter "Routt", Sandra Green Individually hereinafter

"Green", Tom South Individually hereinafter "South" and Ken Kohn Individually,

hereinafter "Kohn" and Rick Camtrell as Acting Director of the Secretary of State for the

Department of Environmental Protection, hereinafter "Camtrell".

## SUBJECT MATTER JURISDICTION AND VENUE

1. This is an action for damages which exceed $500,000.00 exclusive of a

statutory entitlement to attorney fees and costs.

2. This action is brought pursuant to 42 USC § 1983 for violations of the

Plaintiffs' fundamental and civil rights as guaranteed by the Fourteenth Amendment to

the United States Constitution, 11 USC § 362(a), (providing that the filing of  a

Bankruptcy petition operates as a stay of the commencement or continuation of a judicial

proceeding against the debtor or debtor in possession's business relationships), 11 USC §

362(h) (permitting recovery of actual damages, and in certain circumstances punitive

damages, where an individual is injured by any willful violation of a stay) and 11 USC §

1301 (proving for an automatic stay of action against a co-debtor in Chapter 13 cases).

Pro se Plaintiffs bring this action alleging that Defendants have proceeded against the

Debtor, the Debtor in possession's business relationships and co-debtors and co-

obligators in violation of the automatic stay entered by the United States Bankruptcy

Court for the Middle District of Florida which in doing so violated all of the Plaintiffs

2

14th Amendment Rights under the Constitution of the United States of America.

3. This Court has jurisdiction of this action pursuant to 28 USC § 1331. This action arises under the constitution of the United States of America and alleges violations of civil and constitutionally protected rights of the Plaintiffs as citizens of the United States of America.

4. This Court has jurisdiction of the state actions as supplemental to the civil rights action and arising out of the same facts and circumstances and involving the same parties pursuant to 28 USC § 1367(c).

5. By the power and authority vested in the Desoto County Governmental agency Defendants and their actions and conduct alleged herein constitute the unlawful activities in violation of the Plaintiffs' constitutional rights under color of law as set forth herein.

6. Prior to bringing this action the Plaintiffs have fulfilled any and all conditions precedent to filing this lawsuit and did make written claim upon the appropriate agencies as required by 768.28(6)(a) Fla. Statutes and will send 2 copies of this Complaint as requested by the state of Florida Division of Risk management Bureau of State Liabilities Claims in care of Christy Glisson, Insurance Specialist at 200 East Gaines Street, Tallahassee, Florida 32399-0338.

## PARTIES

7. Plaintiff "DeLaet" is an individual who resides in Lee County, Florida.

8. Plaintiff "Clark" is an individual who resides in Desoto County, Florida.

9. Plaintiff "Callaway" is an individual who resides in Desoto County, Florida.

10. Defendant Craig "Coffee official" at all times material hereto was the former

3

head of Desoto County Community Development Code division.

11. Defendant Jorge "Hernandez Official" is currently the Head of Desoto County Code Division.

12. Defendant Lester "Hornbake official" who at all times material hereto was employed as Head of Desoto County Building and Zoning.

13. Defendant Craig "Coffee" Individually at all time material hereto was employed by Desoto County for Desoto County government.

14. Defendant Shelia "Sapp" Individually at all times material hereto was employed by Desoto County, Florida ,Government.

15. Defendant Jorge "Hernandez" is an individual who at all times material hereto was employed by the Desoto County Government, Craig Coffee being his boss during part of the time the damages occurred.

16. Defendant Lester "Hornbake" individual is a resident of Desoto County Florida.

17. Defendant Kimberly "Routt" is an individual employed by the State of Florida DBPR and all actions material to this lawsuit occurred in Desoto County, Florida.

18. Defendant Sandra "Green" is an individual employed by the State of Florida DBPR and all actions material to this lawsuit occurred in Desoto County, Florida..

19. Tom "South" is an individual who resides in Desoto County Florida.

20. Ken Kohn is an Individual who resides in the State of Florida.

21. Rick Camtrell is an Individual whose office as the Acting Director of the Secretary of State for the Department of Environmental Protection located in Tampa, FL.

4

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

22. The Plaintiffs have been in ongoing litigation and or official legal dispute with the Desoto County Defendants since June 1, 2005 continuously thorough present 2009.

23. Plaintiff K. A. Delaet on June 2, 2005 transferred all her assets from You Ride to herself individually.

24. On June 22, 2005 Plaintiff K. A. Delaet filed a Chapter 13 Bankruptcy with the Federal Bankruptcy Court case #05 12583 APL see Exhibit "A".

25. Plaintiff Delaet's Chapter 13 eligibility; Any individual even if self employed or operating a business (like Delaet selling cars at 3132-3172 SW Highway 17) is eligible for Chapter 13 relief as long as the individual's unsecured debts are $307,675 and secured debts are less than $922,975. 11 USC § 109(e).

26. In Plaintiff Delaet's Chapter 13 case to participate in distributions from the bankruptcy, unsecured creditors, including civil and administrative claims of any kind, must file their claims with the Bankruptcy Court within 90 days after the date set for the meeting of creditors. Fed. R. Bankr. P. 3002(c). A government however has 180 days from the date the case is filed to file their claims 502(b)(9). Desoto County Government and their officials therefore had 180 days to file any type of administrative claims they needed to file to comply with the Chapter 13 bankruptcy requirements.

27. None of the named Defendants nor their attorney of record timely or otherwise filed any claims whatsoever as specifically required under Plaintiff DeLaet's Chapter 13

5

against the debtor her Court approved bankruptcy plan or business being conducted at 3132 thru 3172 SW Highway 17, Arcadia, Florida to repay her creditors.

28. Plaintiff DeLaet's  Chapter 13 Plan and confirmation hearing. In Re: having the bankruptcy case administered on January 20, 2006, Federal Bankruptcy Judge Alexander Paskay noticed an open court confirmation hearing notice which states as follows:

Notice is hereby given that :

A hearing will be held at the United States Bankruptcy Courthouse, Fort Myers Federal Building and Federal Courthouse room 4-117, Courtroom D, 2110 First Street, Fort Myers, Florida on February 16, 2006 at 1:30 PM before the Honorable Alexander Paskay, united States Bankruptcy Judge to consider and act upon the following matter:

Confirmation hearing and hearing on objections to confirmation, if any. Any party wishing to object to this Chapter 13 plan must do so in writing ten days prior to the above hearing date and must serve the objection on Debtor(s), Debtor(s) attorney and Trustee and ………………….. See Exhibit "B".

29. None of the named Defendants nor their attorney of record filed any objections nor attended this Court Ordered confirmation hearing.

30. Plaintiff B. L. Callaway individually is the Bankruptcy Court approved financer and business associate (protected by the bankruptcy stay) and reaffirmed creditor of the bankruptcy estate and is a vital part of the Debtor's Court approved Bankruptcy Plan in that she is the debtor's financer and lender and provided the funds and vehicles for the bankruptcy plan, which is the car sales business to sell from the subject location

6

(3132-3172 SW Highway 17) in order to repay the creditors from the profits of the car sales.

31. Plaintiff Noel Clark, Jr. is also a vital part of the Debtor's Court Ordered bankruptcy run business and a bonified business associate and affiliates, Noel Clark is the debtor's father and provided the necessary bonds, credit, and reputation required for Debtors state license to sell automobiles and also Noel Clark co-signed Debtors mortgages and loans with reaffirmed creditor Peter Stocker and reaffirmed creditor Jean Chila. See Exhibit "C".

32. B. Lynn Callaway as Trustee is Plaintiff/debtor DeLaet's landlord of the property she is doing business from, as Debtor in possession, to repay her creditors through operation of her car sales business in the Court Ordered 3 year Chapter 13 plan at 3132, 3152 and 3172 SW Highway 17 Arcadia, Florida. See Exhibit "D"

33. *11 USC § 362. Automatic Stay*
*(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302 or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970, operates as a stay, applicable to all entities, of...*
*(1) the commencement or continuation, including the issuance of employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;*
*(2) The enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;*
*(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate. (#3 pertains to the car sales business operated through the Bankruptcy Court approved plan and reaffirmation agreements with legitimate creditors and the vehicles which were property of the Bankruptcy Estate. Desoto County's Craig Coffee and Jorge Hernandez demanded removed from the subject property under an illegal administrative action. These acts were protected by the Bankruptcy Stay because the cars were property of the Bankruptcy Estate and the business operated pursuant to the Bankruptcy Plan.)*

7

*(4) any act to create, perfect, of enforce any lien against property of the estate; (#4 pertains directly to the improper illegal litigation against business associate Noel Clark, Jr. Individually and B. L. Callaway individually and as Trustee who was a reaffirmed creditor of the bankruptcy estate, Debtors landlord in an effort to circumvent the bankruptcy court by Craig Coffee and Jorge Hernandez and Desoto County Government.)*

*(5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title;*

*(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title; (this applies to Desoto County Government and Plaintiff/Debtor K. A. Delaet's alleged need for an occupational license renewal.*

*(7) the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor; and*

*(8) the commencement or continuation of a proceeding before the united States Tax court concerning a corporative debtor's tax liability for a taxable period the bankruptcy court may determine or concerning an individual debtor's tax liability for a taxable period ending before the order for relief under this title.*

*(1) under subsection (a) of this section of the commencement or continuation of a civil or administrative action or proceeding to withhold suspend or restrict an occupational license of a debtor upon commencement of the case under this title.*

*(1) The stay of an act against property of the estate under subsection (a) of this section continues until such property is no longer property of the estate;*

34.

*(2) the stay of any other act under subsection (a) of this section continues until the earliest of;*

> *(A) the time the case is closed;*
> *(B) the time the case is dismissed.*

35. In addition to none of the named defendants ever filing a notice of claim that is required, none of the named defendants or attorney of record ever filed any motions for stay relief to allow them to proceed and litigate civilly or administratively or otherwise pursuant to 11 USC § 362 (a) as in number 34 above.

36. The Debtor/Plaintiff K. A. DeLaet operated her car sales business under Bankruptcy Court Order according to her chapter 13 three year repayment plan. This operation of business was protected by the automatic stay provided by the United States

8

Bankruptcy Court pursuant to 11 USC § 362(a) and 1301 while Desoto County and the named defendants interfered with Debtor her affiliates and business associates throughout this entire period. See Exhibits "E1" as to Clark and "E2" as to Callaway.

37. On February 26, 2009 Debtor Plaintiff K. A. Delaet received a formal discharge after completion of the Chapter 13 plan this is also the date the 11 USC § 362 and 1301 stay ended. See Exhibit "F"

38. This discharge releases the debtor/Plaintiff K. A. Delaet from all claims disallowed under section 502 and those that no timely proofs of claims were filed with the Bankruptcy Court. Upon this discharge all parties are barred from initiating or continuing any actions against the debtor. Upon discharge the Debtor now has the right to sue for damages and for violations of federal law and her 14th amendment rights in the Federal District Court for the Middle District of Florida.

39. Plaintiffs Clark, DeLaet, and Callaway demand a trial by jury on all issues in all counts.

40. Plaintiffs reserve the right to name additional defendants after discovery who are believed to have conspired with, aided and abetted the Defendants in causing injury to Plaintiffs, Clark and Callaway have had continuous episodes of serious additional violations of their constitutional rights causing Plaintiffs more and more damages during the pendency of cases before the US District Court of the same parties.

41. Plaintiffs Clark and Callaway became witnesses at the You Ride/DeLaet's state Court trial against Defendant South and this started the obsession for revenge.

42. Plaintiff K. A. Delaet owned an Auto sales business named You Ride USA

9

originally doing business out of Tom South's property at 3405 SW Highway 17 in
Arcadia, Florida in 2003.

43. Defendant South saw this auto business was successfully growing and decided
he wanted this business at his location and decided to manufacture some problems, take
back his lease and wanted DeLaet's car business for himself and he wanted You Ride
USA not only out of business but completely out of Arcadia, Florida so he would have no
competition.

44. In late 2003 and early 2004 Defendant South devised a malicious conspiracy
scheme enlisting his long time friend Defendant Shelia Sapp who agreed to participate in
his conspiracy and who just happened to work for Desoto County Government and this
conspiracy has been ongoing through present day. Shelia Sapp willingly aided and abetted
South in this civil conspiracy. South bragged, of Sapp's agreement in joining in his
conspiracy and helping him. Defendant South and then Sapp in late 2003 enlisted Code
Officer Jorge Hernandez to join in this malicious conspiracy and he also agreed to,
pursuant to his actions, under color of law willfully, maliciously, and illegally went after
the Plaintiffs. And Plaintiff DeLaet's business You Ride USA in early 2003 to help
Shelia Sapp and her long time friend Tom South eliminate his competition and take
Plaintiff DeLaet's car business for South.

45. Defendant Sapp had her dear friend Defendant South file a false official code
enforcement complaint stating Noel Clark personally, not You Ride USA or Delaet the
owner who was performing auto mechanics work on vehicles from the originally leased
location that was Tom South's property at 3405 SW Highway 17. You Ride USA had

10

worked on vehicles with Defendant Tom South at that location for a year prior to the planned complaint being made. Tom South and You Ride USA  had done mechanical work on Defendant Shelia Sapp's husband's truck and her car along with numerous Desoto County employees. All was fine and dandy with Desoto County Government, but as soon as Defendant South decided to take it all for himself and double cross Plaintiff K. A. DeLaet. Desoto County officials by agreeing to be a party to Tom South's conspiracy plan now took the position that no mechanical work could be done on the premises. However today in 2009 and since September 2004 Tom South is performing all types of mechanical work for the general public at that same location.

46. In April 2004, Defendant Jorge Hernandez became increasingly obsessed and illegally and without any resemblance of legal authority from the state or the Desoto County commissioners filed a Notice of Violation against Noel Clark, Jr. personally, and individually. Jorge Hernandez knew he was willfully and illegally causing a personal violation to be made against Noel Clark, Jr. Individually. knowing that Noel Clark, Jr. didn't own You Ride, doing business on the property nor did he own the property, Jorge Hernandez and Desoto County knew K. A. Delaet was the business owner. Jorge Hernandez went way over and above his administrative duty as a code officer and violated Desoto Counties own written procedures in their LDR 11703B policy the Desoto County Commissioners have put into written procedures that Jorge Hernandez and Craig Coffee must follow.  At that time Clark was not aware that all Jorge Hernandez possessed in legal authority was administrative authority, to post and supply a notice only.  Jorge Hernandez become increasingly obsessed with going after the Plaintiffs and began

11

violating his own authority and work rules cited in LDR 11703B, committing all kinds of

violation of law to aid and abet the ongoing conspiracy started by South and Shelia Sapp.

This was a substantial infringement of County Commissioner's written procedures LDR

11703B that Jorge Hernandez and Craig Coffee are governed by and supposed to follow

to the letter and which shows they are going way over and above their prescribed job

duties in fulfillment of their planned joint conspiracy. This also resulted in major

damages to the plaintiffs by these overt acts done under the conspiracy to illegally put the

Debtor Delaet out of business Plaintiff Delaet eventually lost everything.

47. In 2005, Lester Hornbake revealed to Callaway's attorney that Sapp was fired

for widespread discrimination practices. The illegal set up of Tom South's double wide

home was discovered by the members of Desoto County commission showing Sapp had a

propensity to engage in conduct that was a danger to the public good and Desoto County.

Therefore opening up the County to the legal liability for her actions while employed by

Desoto County.

48. Plaintiff Callaway hired an attorney to go to Desoto County zoning before

closing on the property at 3132, 3152 and 3172 SW Highway 17 to make sure that the

property was properly zoned for a car dealership so that Plaintiff Delaet could move her

dealership You Ride from the South property at 3405 SW Highway 17 to this location.

Desoto zoning told her attorney that the property was OK for a car dealership and zoning

already included the use as Auto Sales. See Exhibit "H".

49. In 2004 Plaintiff Delaet moved her car dealership from the South's property at

3405 SW Highway 17 to 3132, 3152 and 3172 SW Highway 17 and ultimately obtained a

12

Desoto County occupational license for You Ride at that location. See Exhibit "I" attached hereto and made a part hereof.

50. South didn't like You Ride USA, moving down the block from his newly licensed car dealership business and wanted his buddies from Desoto County to aide him again as a Good ole boy and take action to do away with this competition so he started a barrage of new complaints of every possible nature.

51. Jorge Hernandez became so obsessed and involved in this overt conspiracy that he decided he would go after Noel Clark individually just as he had done before at South's location it worked the first time so he decided to try that scheme again. He got away with that illegal action targeting and going after Noel Clark individually at 3405 SW Highway 17 on South's property for the business You Ride, doing mechanical work. At that time Clark was ignorant of the law and merely complied to avoid problems. Now Clark has made a point to research the legal authority given to Jorge Hernandez and Craig Coffee and the Desoto County Code enforcement division that they must follow to the letter. Clark found that the Notice of Violation given by Jorge Hernandez and that Defendant Hernandez and Defendant Coffee held only administrative authority to give notices outlined in the LDR 11703B written procedures which Jorge Hernandez and Coffee violated over and over again. Hernandez and Coffee and the whole code division has been abusing their limited legal authority and their own written procedures and have been illegally and unlawfully taking advantage of the citizens of Desoto County including the Plaintiffs herein and this must be stopped. At this time of Plaintiffs K. A. Dealt was operating her car sales business through her Chapter 13 Bankruptcy Plan under an 11

13

USC 362 (a) automatic Stay. That protects the Debtor and all associated property and those associated with Debtors car sales business, her vehicles the Court Ordered locations and every aspect of that car sales business, it's lenders and business associates. Defendants were without proper legal authority or jurisdiction to willfully and maliciously violate the County Government agencies own written procedures in their written LDR 11703(b) which was necessary to violate the Plaintiff DeLaet's automatic stay and all of the Plaintiffs' fourteenth amendment to the constitution of the United States.

52. Desoto County Government and their officials start the malicious conduct and outright extreme abuse of legal authority by them violating their County Government agencies' own written procedure handed down by the County Commissioners became a widespread custom a permanent and well settled fact that continued for 4 years over and over again that this abuse of authority of the LDR 11703b though it usage by Hernandez and Coffee constituted this custom of abuse with the force of law and this custom constitutes deliberate indifference to Plaintiff's constitutional rights and was the moving force behind the constitutional violations.

53. As of June 22, 2005 the day the debtor/Plaintiff K. A. Delaet filed for protection in a Federal Chapter 13 Bankruptcy action. All actions and incidents from 3132-3172 Highway 17 Arcadia, Florida associated with Debtor/Plaintiff K. A. Delaet's bankruptcy Court Ordered and run car sales business and all illegal interference with her business associates, financiers, landlords and anyone associated with her Bankruptcy Court approved and run business to repay to creditors and all protected by an 11 USC §

14

362(a) and 1301 automatic stay through the discharge date of February 29, 2009. Desoto County Government and their officials committed the willful, on purpose actions and there was no negligence or mistake. It was strictly calculated to willfully and maliciously cause severe damage and loss of property on all the plaintiffs and to circumvent the Plaintiff/Debtor DeLaet's bankruptcy. These willful acts of the defendants caused the Debtor/Plaintiff DeLaet and the other Plaintiffs to be subjected to violations of their constitutional rights under the 14th amendment to the constitution.

54. When K. A. Delaet filed her Chapter 13 Bankruptcy in June 2005 at that time her current occupational license was current and not up for renewal until September 2005. Desoto County despite the bankruptcy petition and the automatic stay that it afforded to the Debtor and her business that was operating to pay her plan payments to repay her creditors. Desoto county Government and these officials refused to renew her occupational license just because she filed the petition. Which is a violation of the Bankruptcy Stay.

55. Simply put Desoto County Government and their officials as named Defendants herein were shut down, unable to proceed under their LDR 11703B or from any other Desoto County rule, ordinance or state law. Upon the filing of the Bankruptcy it became the burden of Desoto County to petition the bankruptcy Court for a stay relief order so that they could legally proceed against the Debtor or any of her associates or the car lot sales business itself which was bankruptcy court approved and ordered to operate at the location in question. If Desoto County decided K. A. DeLaet needed a new or renewed occupational license for her bankruptcy court approved car sales business their

15

only legal avenue for relief was through the bankruptcy Court in the form of a stay relief Motion and Order before they could proceed. They certainly could not simply withhold renewing her occupational license or to commit any of the numerous illegal actions against the debtor, the property of the bankruptcy estate, the debtors business associates and financers and landlord without bankruptcy Court approval.

56. The only way Desoto County could proceed as of the filing of the bankruptcy petition on 6/22/05 to obtain bankruptcy court approval was to file a claim in the form of a proof of claim and then seek a timely filed stay relief Motion not circumvent the bankruptcy law to obtain the same remedy by illegal and unscrupulous means.

57. This was their tried and true illegal avenue of willful violation of Plaintiffs constitutional rights. This same scenario has been played out time and time again by the Desoto County Government and their officials. Their motivation for these violations against Plaintiffs was to circumvent the bankruptcy process as well as to put the car lot business in competition with their friend and co-conspirator Tom South out of business in Desoto County. Not only did they willfully and illegally circumvented the Federal Bankruptcy laws and rules but at the same time they violated Plaintiffs' fourteenth amendment constitutional rights all without proper or legal due process of the federal bankruptcy laws. The Defendants were obsessed and all defendants were in a state of mind whereby they knew in advance that their actions were malicious, extreme and outrageous and illegal. They knew they would be required to violate their own written policies and procedures to manipulate the states customs to do harm to Plaintiffs and intentionally harm them using the government under color of law as the illegal tools to cause a constitutional violation on Plaintiffs Clark and Delaet and then again the same

16

scenario on Plaintiff Callaway individually. Bluntly put, the Desoto
County government sanctioned their officials to intentionally violate their own written
procedures, thereby having played a part in the violation of Federal Law. The government
entity was the moving force behind Plaintiffs' deprivation in the counts relating to Desoto
County Defendants. If the Code Officials and Desoto County Government agencies
officials had not violated state and Federal law including their own written policies set
forth by the Desoto County Commissioners and procedures there would be no deprivation
of the Plaintiffs' constitutional rights from those defendants. Since there was, this
provides the direct casual link between the government's written policies and procedures
and the constitutional deprivation confirming municipal liability in a 1983 case.
Defendant supervisor Coffee directed or allowed his subordinate Hernandez to violate
their own written polices and procedures and act illegally and unlawfully under color of
law to damage Plaintiffs with supervisor Coffee also personally participating in the
unconstitutional conduct of violating the laws.

58. At no time ever did Shelia Sapp, Hernandez or Coffee, Hornbake or the
Desoto County Government agency issue any notices of any violation, whatsoever to the
debtor, the trustee, the bankruptcy court pursuant to the Federal Bankruptcy law
requirements.

59. Defendants Hernandez, Sapp, Hornbake and Coffee wanted to aid Tom South
and get ride of K. A. Delaet's car dealership, South's competition. But they were smart
enough not to become involved in the Federal Bankruptcy and have it revealed that they
were going way over their authority provided as code officers. They sought to illegally

17

circumvent the bankruptcy altogether. That is why Desoto County Government and their officials targeted the Debtor's business associates to illegally damage them to the extent they would in turn put the Debtor K. A. DeLaet out of business.

60. Arcadia is a small town and everyone knows almost everyone else in the entire little County. Kathy Hill the tax collector, Newt Keen the property Appraiser all knew B. Lynn Callaway personally and visa versa and that she as Trustee purchased the properties at 3132, 3152 and 3172 for the specific purpose of Plaintiff KA Delaet to run her car dealership out of that property after moving from Tom South's property location. This new business location was the one disclosed in Schedule #16 to the United States Bankruptcy Court attached here as Exhibit "J".

61. Defendants Hernandez, Coffee, Hornbake and Sapp all knew Noel Clark was not the car sales business owner and not the property owner at 3132, 3152 and 3172 SW Highway 17, they knew they were violating their own authority as state officials and they did not care. They all knew Plaintiff DeLaet was operating her car sales business as a debtor in a bankruptcy court approved Bankruptcy Plan at that specific location. Simply put Desoto County and their officials the Defendants herein were shut down, unable to legally proceed under their LDR 11703B or from any other Desoto County rule ordinances or state law by the Federal Bankruptcy stay.

62. A petition has been filed with Desoto County by some 2600 citizens (Exhibit "G" including Clark and Callaway who represent the classification of the general public describing the wide spread abuse of power and equal protection by Desoto County code division Jorge Hernandez, and Coffee and of the favoritism towards citizens like Tom

18

South and their other "Good ole boys" classified group. The petitioners seek the Desoto County Code supervisors to correct the deviations of widespread abuse all over Desoto County. These 2600 citizens including Clark and Callaway signed petitions putting the responsible supervisors of Desoto County Code enforcement on Notice of the need to correct the alleged deprivation and Desoto County government refuses and fails to do so. This establishes yet another requisite casual connection. Exhibit "G" attached hereto and made a part hereof.

63. After June 22, 2005 Jorge Hernandez and Craig Coffee continued to harass and proceed unlawfully and illegally against Clark, individually as the alleged land owner of the property where Plaintiff Debtor K. A. Delaet Clark's daughter's Bankruptcy Court approved plan operated a car sales business at 3132, 3152, and 3172 SW Highway 17 in Arcadia, Florida as part of the overt conspiracy under color of law. Hernandez and everyone else in Desoto County knew Clark individually did not own the property nor the car business. This was part of their plan to circumvent Plaintiff/Debtor DeLaet's bankruptcy and her court ordered business plan.

64. The continued harassment by defamations, tortuous interference and the actions by South, Sapp, Hornbake, Hernandez and Coffee drove Clark to become stressed out and suffer life threatening heart failure. After he survived 2 heart surgeries Clark filed suit in Federal Court.

65. Once Clark filed a Federal lawsuit Hernandez, Coffee and Desoto County Government decided to then go after B. Lynn Callaway and then claimed Clark had no standing in Federal Court because he was not the landowner, or business owner. This

19

defense was a complete turn around, after years of Clark stating he was not the proper

party, not the land owner, not the business owner. (there was no "sorry" for nearly killing

you or what we have put Clark through, but just he's the wrong guy and now we will

illegally harass and unlawfully, without due process go after Ms. Callaway under color of

law, violate her constitutional rights and see how long she will tolerate this behavior and

see if this will help to hurry up putting the Plaintiff Debtor/Delaet out of the car sales

business.)

66. Plaintiff Callaway followed by also filing a Federal Lawsuit against

Hernandez and Coffee and she also shut down the totally frivolously quasi juridical

special master case, Hernandez illegally caused to be filed against her and the property.

67. Now, since both Clark and Callaway had filed separate lawsuits in Federal

Court one would assume that all that was left was for South, Hernandez, Sapp and Coffee

would be to allow their lawyers to try the cases in Federal Court on their merits. This

simply was not good enough for Defendants Hernandez or Coffee who wanted that car

business out of business and gone from that location and he wasn't going to wait for any

trial on the merits of the case to get Plaintiff DeLaet gone and out of business at that

location in Desoto County.

68. On the 4th day of April 2007 when Desoto County Government and their

officials pursued administrative litigation the alleged code violation of K. A. Delaet not

renewing her occupational license for her car sales business at 3132-3172 SW Highway

17 Arcadia, Florida by and through her creditors, representatives, assets, servants and

landlord financers and co-business associates working directly with her Bankruptcy Court

20

Ordered car sales business and Chapter 13 Plan designed to repay her creditors at this Desoto County location. Plaintiff/Debtor K. A. Delaet officially filed a judicial notice in the administrative case 2007-011 against B. Lynn Callaway as Trustee citing violations of the Plaintiff Debtor K. A. Delaet automatic stay pursuant to her confirmed bankruptcy plan which was the car lot sales business at 3132-3172 SW Highway 17 in Desoto County, Florida. See Exhibit "K" Plaintiff/Debtor K. A. Delaet also on the 4th day of April 2007 filed a suggestion of Bankruptcy copy attached as Exhibit "L"

69. Plaintiff Callaway also filed a Notice of Filing on Desoto Administrative case 2007-011 See Attached as Exhibit "M" advising attorney Roper of all the willful Bankruptcy stay violations and filed an amended Motion to Abate the Administrative Action See Exhibit "N".

70. The Desoto County Government in a blatant move to circumvent the bankruptcy did not immediately stop their administrative actions, they commenced without filing a proper and timely proof of claim as is specifically required under the Federal Bankruptcy law and never filed a Motion in the Bankruptcy Court to seek a stay relief order form Judge Alexander Paskay, so Plaintiff Delaet filed a Bankruptcy Adversary Complaint notifying the Bankruptcy Court of all the violations of her automatic stay on her creditor, landlord, bankruptcy Court approved and ordered financer, participants and business associates and credit customers whose monthly payments to the plans business was property of the bankruptcy estate as well as the leined vehicles they were paying on, money pledged to pay creditors. See Attached as Exhibit "O"

See Attached Docket Exhibit "P"

21

71. As soon as the Desoto County Officials and especially the attorneys were served it was a whole different story and completely different position. Desoto County attorney Don Roper claimed the Desoto County Government, knew but did not advise him that the car business at 3132-3172 was being run as a confirmed 3 year bankruptcy plan of K. A. Delaet and he refused to represent any of the Desoto County parties in the adversary case in Bankruptcy Court. The Desoto County Defendants were going to have to proceed pro se or pay for their own individual attorney and they immediately wanted out of the Bankruptcy Adversary Case.

72. Attorney Carmen Deluttri Plaintiff/Debtor Delaet Chapter 13 Bankruptcy took over the case as Plaintiff's counsel of record.

73. Plaintiff Debtor Delaet voluntarily dismissed the case at the first hearing because all of the Defendants verbally agreed to stop violating the automatic stay and not pursue any further actions without properly filing the appropriate Motion for Stay Relief in the bankruptcy case which is upon filing, a contested matter and a hearing is immediately scheduled. The Desoto County Government and officials immediately abated their administrative case seeking the requirement of Debtor's car lot business to have or renew her occupational license. See Exhibit "Q" Tom South and his attorney dropped all his litigation against all these party Plaintiffs. Don Roper Desoto County Defendant's attorney filed a suggestion of Bankruptcy to cover his own ass and his law firms. See Exhibit "R" attached hereto.

74. Plaintiff/Debtor Delaet was in a bankruptcy a Chapter 13 plan that paid all of her creditors 100%, now she is indigent. B. L. Callaway individually was her financer and

22

provided her court ordered plan with funds, money and cars and sale contracts of which all of this became the property of the bankruptcy estate for the profits to fund the plan and repay debtors creditors. Plaintiff/Debtor can not use the estate/creditors assets to fight an adversary case so it was prudent to mutually dismiss it if all the parties were agreeable and sincere. Attorney Deluttri estimated the cost to take on a state funded agency with unlimited funds would be $50,000 up front, but would be very easy to win as they were dead wrong and Desoto County would bite the bullet for violation of the stay.

75. Desoto County Government, Jorge Hernandez and Craig Coffee just were not satisfied with the bankruptcy run car business still being operating in Desoto County so they devised a new plan to circumvent the bankruptcy even better and cause more damages to the Debtor and Debtor's business associates and creditors who were still protected by the 11 USC automatic stay.

76. Judge Paskay did not allow the Adversary case to be dismissed without first chastising the violating parties in open Court even threatening to send the Federal Marshals to pick them and their attorney's up and hold them until he decided to set a hearing on any re-violations. The Desoto County violators said they would not put that agreement to writing and admit they violated the automatic stay so Debtor was forced to trust them.

77. So beginning in April 2007, as a continuation of their civil conspiracy scheme under color of law, South, Dees, Mr. Hernandez's and Mr. Coffee's alter ego and Desoto Code Enforcement contacted the State of Florida Department of Environmental Protection in Tampa. Purposely failing to mention that You Ride was Clark's daughter's

23

business and that Clark was not the owner of the business or the land and that the business was being run by Plaintiff K. A. Delaet as a Debtor in possession under a Federal Bankruptcy Court Ordered reconciliation agreement and a federal stay order, or that Clark had had open heart surgery and was nearly completely incapacitated for nearly 1½ years as a result of the intentional infliction of emotional distress by these co-conspirators. Defendants South, and Dees being Hernandez's and Coffee's alter ego for Desoto County under color of law, willfully and maliciously made a barrage of false and fabricated complaints to the DEP that Clark was personally dumping oil and contamination all over K. A. DeLaet's dealership property and Callaway's residence property and both Clark and Callaway were dumping vehicles at both locations, and that these locations were owned by Trusts not Clark or Callaway. These vehicles were all actually floor planned (financed) property of the bankruptcy estate that were to be sold to pay off the approved Court Ordered bankruptcy plan and creditors.

78. The purpose of filing this barrage of false and fabricated untrue complaints against Clark and Callaway individually was to defame, discredit and damage them individually and their business relations to the extent of putting the Debtor Plaintiff's car lot business out of business in Desoto County and to eliminate Callaway's lease income and ultimately ruin all Plaintiffs financially. This would also help the Defendants as they were being sued by Clark and Callaway. To have them arrested, charged with a criminal offense would aid and help their position in the pending Federal lawsuits.

79. There is no provision in Hernandez's or Coffee's job employment duties set forth in the County Commissioners LDR 11703b that resembles taking an alter ego of Mr.

24

Jimmy Dees and willful and malicious filing of false, untrue, defamatory, complaints on citizens for the purpose of having that citizen falsely arrested and criminally charged, those criminal charges appear permanently on the public records.

80. The Desoto County Government and sister State agency boys are eager to assist each other and use their color of law position to help out another agency buddy all hiding behind their claim of immunity from prosecution. Coffee and Hernandez through alter ego Jimmy Dees (a fictitious County employee) contacted Ken Kohn with another state agency SWFWMD and made more bogus official complaints about Clark and Callaway having hazardous waste. Defendants Coffee and Hernandez did this so they could have another State funded agency to go after Clark, Callaway and Debtor K. A. Delaet to do their dirty work and cause the Plaintiffs more damages, and money to defend more false prosecution. This also was accomplished to ultimately circumvent Plaintiff K. A. Delaet's bankruptcy and put her out of business in Desoto County.

81. Ken Kohn with SWFWMD knew he had a fictitious complainant yet he choose to use his color of law official state agency position to send this anonymous complaint on to Rick Camtrell acting director secretary of state for the Department of Environmental Protection for the Southwest District so that Camtrell could use his official color of law position and his state agency to further prosecute and damage the Plaintiffs. Ken Kohn told Rick Camtrell that the complainant Jimmy Dees was fictitious, the alter ego of Desoto County Government, Code Enforcement, Jorge Hernandez and Craig Coffee but they needed co-agency assistance with some un-cooperative citizens. See Exhibit "S"

25

82. Jimmy Dees the alter ego of Desoto County Code enforcement, Craig Coffee and Jorge Hernandez made direct complaints of fabricated hazardous waste and pollution to Rick Camtrell to cause the DEP to act on their complaint and for the DEP to take improper action under color of law against the Plaintiffs also at this same time Ken Kohn and Curt Mays of Desoto County made the same bogus complaints, under color of law as state officials, in order to make the fake complaints appear urgent. See Exhibit "T"

83. Rick Camtrell and his state funded agency the State of Florida DEP took charge of the Jimmy Dees, Hernandez and Coffee, Kohn and Mays's complaints made under color of law as being true. Rick Camtrell sent his DEP Officials and had Clark arrested and charged him with 16 felony and misdemeanor counts, See Exhibit "U", put Plaintiff Clark in jail and told Callaway they were seeking charges against her for 600 charges all possible felony charges for each vehicle on both properties. See Exhibit "V" Clark was required to post cash bonds on each individual charge to get out of jail. Callaway was faced with being charged the same way but 600 times over or getting rid of the 600 vehicles on both properties. The vehicles had an average value of $1,000 to $5,000 each. Callaway individually could not risk a felony charge for each vehicle and she would not be able to bond out of jail. She paid to "give away" and get rid of the vehicles in a quick immediate fashion. With this Hernandez, Coffee and Desoto County Government's goal was accomplished, to have the cars off both properties thereby monetarily damaging Callaway individually by virtue of this overt conspiracy all while violating the bankruptcy stay pursuant to Plaintiff Debtor DeLaet's bankruptcy constituting a Federal violation of Plaintiffs constitutional rights to due process of the bankruptcy laws and violate all of the Plaintiffs constitutional rights under

26

the 14th Amendment to the US Constitution..

84. Callaway was under considerable stress at being threatened with incarceration and criminal charges, just like Clark but times 600. As a result of having to get rid of the cars with out receiving any compensation Callaway individually lost all the money she had invested in these vehicles on floor planning, financing and the bankruptcy reconciliation agreement she had entered into with K. A. Delaet. Callaway also lost her $5,000 per month 10 year lease with K. A. Delaet as a result of the damages from the overt acts of the unlawful conspiracy, defamation and other deliberate acts of the defendants. See Exhibit "D"

85. Plaintiff B. L. Callaway lost all of her personal life savings that she invested in the Bankruptcy Court approved Estate of K. A. DeLaet's 600 cars which were to have been sold at retail to provide the funds that were used to pay the Court Ordered Bankruptcy Chapter 13 Plan and Reconciliation agreements with the Debtor's creditors.

86. The stress of being jailed and having such a high cash bond to be posted was too much for Clark and he was rushed to Tampa General hospital for another major heart procedure.

87. Clark almost died again and was left disabled for life and the Desoto County Government and Defendant's attorney was now admitting Clark was wrongfully targeted by Desoto County. Clark allowed his Federal case to be dismissed without prejudice understanding that the appealed quasi judicial special master proceeding case would be corrected by Desoto County. The lawyer for Desoto County says one thing yet does another, nothing ever got straightened out or corrected and the lawyer for Desoto County

27

was sending the Desoto County Defendants out to continue to cause more and more unlawful damages to Plaintiffs Clark, DeLaet, Callaway individually. Hernandez brags the attorney for Desoto County instructed the Desoto County Defendants that they are government employees and as such have immunity for liability for their damages. There's absolutely nothing about their actions that was within the scope of their employment duties therefore no immunity is qualified.

88. The State attorney of Desoto County refused to prosecute Clark even after he was arrested and put in jail and charged with some 16 Counts. The DEP made an "after the fact" investigation and it revealed no oil or contamination was found on either property and their barrage of complaints were ruled unfounded, false and made just to damage and malice Clark, DeLaet, and Callaway.

89. Clark had a clean record and many years of good experience as the corporate qualifier for his daughter K. A. DeLaet's DMV license and bond and had an impeccable record for his daughter's car dealership with the bonding company.

90. Now, Plaintiff Callaway who was Plaintiff/Debtor Delaet's financer and lender throughout her court approved chapter 13 plan, has been financially ruined by the violations of the automatic stay and has lost everything including her life savings, Plaintiff Noel Clark has been totally disabled by the stress, discredited and slandered given an instant criminal record. Also a result of the violation of the bankruptcy laws and 362 automatic stay the Debtor's Bankruptcy Court approved plan is broke and Plaintiff Delaet forced to borrow more money to pay off her plan and now cannot possibly come up with $50,000 from lender Callaway for Bankruptcy Attorney Carmen Delutri to refile

28

the Bankruptcy Adversary suit against the re violators in Federal Bankruptcy Court. The Violators broke the Plaintiff Debtor Delaet and financially broke her business associates affiliated in her Court approved bankruptcy plan by violating, re-violating and re-violating the automatic stay.

91. Plaintiff Debtor Delaet and with all her car business affiliates that were also protected by her bankruptcy automatic stay have been damaged and this is the reason the lawsuit has been filed in the Federal District Court. The Bankruptcy is now fully discharged and the plan paid 100%. That the Federal Bankruptcy laws and 11 USC 362(a) are well settled Federal laws that must be fully complied with. The Fourteenth amendment to the constitution of the United States of America explicitly guarantees to every citizen that no state, "Shall deprive any person of life, liberty or property without

due process of law". To willfully violated clearly established Federal Bankruptcy Law s and the 362(a) automatic stay and the 1301 stay laws under color of law for the specific purposes of depriving these citizens of life, liberty or property without due process is a Federal 1983 violation.

92. As a result of the overt actions of the Defendants and their conspiracy. Defendants tortuous interference in Clark, DeLaet, Callaway Individually business affairs, slander of Clark's credit and the fact that Clark now has a permanent criminal record on the public records of Desoto County Clark can no longer qualify for or obtain a bond or dealer license and therefore the car dealership was permanently forced out of business as a result of the Defendants illegal overt actions.

29

93. Plaintiff, B. Lynn Callaway while trying to get her already filed case to trial and Coffee, Hernandez and Desoto County government just refuse to let this occur without continuously damaging her over again and over again.

94. Plaintiff B. Lynn Callaway was trying to make some improvements to one the buildings where the car lot sales business had been and allow Plaintiff DeLaet and Melissa Toscano her niece to open a second hand store called Dirt Cheap Enterprises in an effort to help Delaet pay off the last of her creditors. See Exhibit "W". Callaway visited Desoto County community development to inquire if these improvements required any permits. She was informed by Lester Hornbake's office, by one of his inspectors, that she needed an owner permit for the electric, but did not need a permit to simply replace the canopy on the front of the building.

95. Plaintiff Callaway purchased the electric permit, (See Exhibit "X") and began her canopy work and here comes code enforcement with the first stop work order, Jorge Hernandez at it again. They wanted to restart their harassment and conspiracy campaign.

96. Plaintiff Callaway upon getting the first stop work order, immediately went back to Lester Hornbake head of Community Development who's inspector was the one who told her she didn't need a permit for the canopy.

97. Mr. Hornbake now stated "LaTeDa" his inspector made a mistake and she needed a permit and she must also now hire an engineer to design and specify all materials prior to applying for the permit. But that if she would spend all this extra money and get the engineered plan (See Exhibit "Y") and have all work and materials specified by the engineer he would by law then issue her an owner permit. Obviously the

30

conspiracy was on again, Callaway was being damaged and it cost her additional dollars to do the job. Hernandez had enlisted Hornbake into the conspiracy, his participation and actions verify his acceptance.

98. Plaintiff Callaway had already began the project, taken down the old canopy, had $5,000 worth of materials purchased sitting on the ground so she was forced to comply with Hornbakes's new demands and hire an engineer and pay more money and buy this additional permit from Desoto County.

99. The engineer signed off and sealed the building plans and Callaway took them to Lester Hornbake.

100. Lester Hornabake and Desoto County were not happy that Callaway complied but then issued Callaway an owner permit. See Exhibit "Z" .

101. As the property title holder is allowed to do $75,000 in repairs to the building, the copy of the owner builder permit attached hereto and made a part hereof as Exhibit "Z". Callaway re-started her canopy project got a sign off on the framing by Lester Hornabke and began covering it with particle board for another inspection. All the work was done by Clark and Callaway with no employees or contractors.

102. Hornbake, Hernandez now decided to upscale their overt conspiracy and cause Callaway some more damages. After she removed all her roof flashing and covered the canopy with particle board plywood they then under color of law called another state agency to intervene and join in their conspiracy to further damage Callaway. Another Government Agency was enlisted, The State of Florida  DBPR, Kimberly Routt and Sandra Green came from Fort Myers, Florida to Arcadia, Florida and join Hernandez's

31

and Hornbake's overt conspiracy to damage Clark.

103. Defendant Hernandez couldn't stand seeing Callaway making improvements to her building and wanted Callaway stopped what ever it took, and went back to Lester Hornbake to have him do something to stop her. It was taking Callaway a long time to do the little canopy job because Callaway wanted it done right and she and Clark were doing all the work themselves. They did not want to hire any contractor or employ anyone to help her. Mr. Hornbake kept sending his friends to Ms. Callaway's job site to ask for the job.

104. Mr. Hornbake was in the building business his entire life and knew that he had Callaway at a critical point of her improvements, where it must be dried in against the rain or face destruction of all her materials and the entire project, Hornbake took this opportune time to make more false and fabricated claims that Callaway and Clark had hired illegal Mexicans to work on the building and that she wasn't providing workman's comp insurance or taking out taxes. These were all lies, all designed to defame, discredit and damage Callaway, DeLaet and Clark and again attempt to cause criminal charges to be brought against Plaintiff Callaway and again against Plaintiff Clark.

105. Plaintiff Callaway's husband is of Hispanic decent and was born in the republic of Panama and her large family is made up of many Hispanic Americans and many visit her property regularly. Callaway has no employees of any kind to supervise, legal or illegal and hasn't paid one penny to anyone to help her do the improvements to the building and has no obligation to pay any workers comp or taxes and demands strict proof to the contrary.

32

106. Coming from a large Hispanic mixed family Callaway's is very familiar with discrimination and racial profiling of Hispanics and Mexicans. Ms. Routt and Ms. Green met Clark and Callaway as they were returning from lunch at the permitted job site on Highway 17 in Arcadia. Ms. Routt and Ms. Green began making racial remarks stating they were out riding around looking at job sites for Hispanics and illegals and made an insinuation that she saw a Mexican earlier in the morning at the building. Ms. Routt refused to identify herself and Ms. Green pointed to her shirt that had a State of Florida seal embroidered on it. They laughed again about being out checking job sites to see if there were illegal Mexicans. Ms. Routt then got on her cell phone allegedly to verify the owner permit. Callaway told them she had an owner permit and that she was the property owner. Callaway had a child to pick up at school and since these ladies would not identify themselves or their problem she assumed as soon as they verified the permit they would leave. Callaway left stating she would be back in 20 minutes. Clark explained plain and simple that Callaway had no employees whatsoever to supervise and if they didn't want to identify themselves and state their problem they needed to move on and get off the property. They have no jurisdiction over an owner permit doing their own work or repairs with no workers or employees. Clark's statements made Routt and Green madder and madder. Ms. Routt was rude, abusive and threatening and told Clark she had Mr. Hornbake send a sheriffs deputy. Clark invited her to bring the Sheriff so the Sheriff could "show her the highway". Both vowing to assist Hornbake in shutting down Callaway's job which verifies their joint agreement to join the overt conspiracy by the Defendants. A sheriff's deputy showed up and Clark showed him Ms. Callaway's permit

33

and verified there were no worker or employees only Clark and Callaway, he told the DBPR ladies Routt and Green that it looked legal to him. Clark told them to leave the property again this time in front of the Deputy. Routt and Green never did identify themselves and the sheriff's officer did not even know who they were when asked by Callaway, he just said "two ladies from the State". Routt and Green left because they were told by the officer to leave, but this didn't sit well with Routt or Green and they both kept shouting in a tirade that they were "shutting the job down today" and that nobody throws them off of their property. Simply put Routt and Green had no basis or legal authority to be there in the first place, her insinuations of seeing a "Hispanic Male" earlier in the day is a fabricated lie concocted as an excuse to come to Arcadia to purposely harass the Plaintiffs without cause, except that Mr. Hornbake asked her to.

107. Approximately 10 minutes after Routt and Green left the premises Hornbake and Desoto County Community Development placed the attached Stop "Desoto County Development" Work Order on the building. Attached hereto and made a part hereof as Exhibit "I". Callaway immediately went down to Community Development to see Lester Hornbake. Plaintiffs can easily prevail at trial or in a Summary Judgment Motion that the Defendants all acted unscrupulously and outside the scope of their written job functions. The fact that Defendants Routt, Green and Hornbake individually and officially for Desoto County Government botched their job procedures and which was no accident or negligence and was totally deliberate and also clearly substantiated and demonstrates that all these defendants were acting outside the scope of the written employment duties.

108. Hornbake claimed it wasn't his decision it was Routt and Green that asked

34

him to issue a stop work order, this Plaintiffs believe is not the truth, but rather that this result was his plan and intention all along. Neither Routt nor Green work for Desoto County Development. Desoto County government issued the stop work order. He said he really didn't know what their problem was but he did say that Desoto County Government was supporting it and instructed him to put up the Stop Work Order Notice. This verifies Desoto County's and Hornbake's decision to jointly participate in the overt conspiracy. With Green and Routt to damage Clark, DeLaet and Callaway. Defendants Routt, Green and Hornbake deliberately set out to conspire to purposely and wrongfully cause the Plaintiffs severe damages, from their illegal and wrongful actions. These actions were not meant to become such a big issue so in order for this not to get to their DBPR supervisors the Plaintiff Callaway was intentionally not provided with any Court or forum of any kind for her due process challenge of the wrongful illegal and malicious acts committed by Defendants Routt, Green and Hornbake Individually and officially for Desoto County Government.

109. Green, Routt, Hornbake and Desoto County government failed to follow proper protocol and his office's own written procedures regarding this "Desoto County Development" stop work order. Hornbake individually and in his official capacity purposely put up this Notice leaving things out there in limbo and failed to provide any Court forum or judge to hear the matter. No case was set up. Callaway had no place or forum of any kind to dispute any of the unlawful actions taken by Green, Routt and Hornbake and Desoto County. Callaway was provided no place to challenge their actions and seek due process and procedural relief. Plaintiffs were forced to watch as the heavy

35

rains warped and destroyed their canopy roof and interior of the building with no place to

seek procedural relief or any due process as guaranteed under Amendment 14 of the

Constitution of the United States forcing the Plaintiffs to have to file this lawsuit to

redress the many constitutional violations made against Plaintiffs under color of law by

the Defendants. Callaway went to Hornbake demanding an immediate emergency hearing

from Hornbake before whatever Court Judge or special master he was bringing this case

before. Hornbake illegally and unlawfully places this stop work order, threatening

Callaway with criminal prosecution if she took it down or attempted to begin work again.

The Defendants Routt, Green, Hornbake individually and for Desoto County

Governmental agency all knew rain was on the away and this rain would completely

destroy Plaintiffs entire investment and materials and cause additional damages to her

 main and inside structures because the building was not dried in this was their intent all

along. The rain came and did exactly that, destroying Callaway's material and entire

investment, now raining inside her building, walls, floors and ceilings which will now

cost hundreds of thousands of dollars to replace. This was all premeditated conspiracy

plan by Desoto Count Government, Hernandez, Hornbake, Routt and Green. As a result

of this premeditated conspiracy scheme and their overt acts willfully and maliciously

violating Plaintiff's clearly established right to due process of law as Defined by the

fourteenth amendment of the Constitution of the United States of America, context which

deprive an individual of life, liberty and property. Callaway has suffered property damage

that $30,000 escalated to hundreds of thousands of dollars when the rainy season started

and  destroyed the building.

36

110. Defendants Routt and Green violated their own job procedures, customs and polices by becoming willful participants and co-conspirators with Hornbake, Hernandez and Desoto County Government to maliciously harm and damage Plaintiffs Clark and Callaway by knowingly with malice of forethought seek false criminal charges against Clark and Callaway to falsely accuse them of criminal activity and wrongdoing. See Exhibits "2", "3", "4" and "5" attached hereto and made a part hereof.

111. Defendants Routt and Green gave up all rights to qualified immunity when they abused and went outside, over and above their job descriptions and customs and made false and fabricated complaints against the Plaintiffs Clark and Callaway to aid and assist Hornbake and the other defendants who worked for Desoto County Government.

112. Defendants Routt and Green took inappropriate actions resulting in severe damages pursuant to Florida Statutes 489.103(7) See Exhibit "6" to willfully and maliciously join an overt conspiracy through a separate government agency in Desoto County.

113. Defendants Routt and Green used their official authority under color of law as employees of the DBPR as tools to take inappropriate actions against Plaintiffs to make false and fabricated complaints against the Plaintiffs, to have Defendant Hornbake put a stop work order on the building, to defame and libel per se Plaintiffs and to malice and sadistically cause harm to all the Plaintiffs by joining in a civil conspiracy in violation of Florida law to harm and damage the Plaintiffs and also to take it up a step and file fake complaints and reports attempting to have Clark and Callaway arrested for being unlicensed contractors, they knew this was untrue and an outright lie. See Exhibit "7" to

37

Callaway and Exhibit "8" to Clark.

114. Plaintiffs have paid out over $40,000 in property taxes to Desoto County Government on the 3 business locations yet Desoto County Code Enforcement and Jorge Hernandez deprive Plaintiff Callaway of any use for that property. Desoto County and all of the named Defendants joined in a conspiracy tortuously interfered with her business relationships with the Plaintiff Debtor DeLaet resulting in violation of Plaintiffs' constitutional rights and put all of her tenants out of business by the overt acts described in this lawsuit, tortuously interfering with her business relationships has broke Plaintiff Callaway financially, costing her life savings. Now every time Plaintiff Callaway attempts to lease out any part of the property as soon as those people go to Desoto County government where Jorge Hernandez runs them off and goes into this big speal about the zoning must change before anyone can get an occupational license. Now as this pertains to anyone else's business property in Desoto County local government will turn upside down to accommodate them, change any ordinance rules or zoning to comply this however this courtesy is not provided to Plaintiff Callaway, she and her properties are treated completely differently than any other similarly situated property owners in Desoto County.

115. The standard of the LDR 11703(b) attached as Exhibit "12" in defining the limited administrative only duties of job description for a code officer would lead and alert every other reasonable officer in Defendants' place doing the same job to conclude that abusing and going over and above these prescribed written procedures is unlawful and that any officer who abuses his authority in this manner eliminates his or her rights to

38

qualified immunity.

116. The Desoto County commission is not all bad, there are some very good citizens serving the community, these commissioners want to run the county government properly, fairly and with dignity but they can't because their still some old school bad apples commissioners who still believe and support the old school views that it is OK for Desoto County Government to completely ignore the Federal Automatic stay which is a highly respected well settled existing federal law and in doing so violates the constitutional rights of the unimportant general population of citizens, who file for that protection under Federal Law, ignoring their constituent's views and give special treatment to the chosen few, "good ole boys". It is these same old school commissioners who hired these corrupt officials and employees to begin with.

**COUNT I**
**DEPRIVATION OF CONSTITUTIONAL RIGHTS UNDER COLOR OF LAW**
**Craig Coffee as former head of the Code Division for Desoto County, Florida**

117. This is an action for deprivation of constitutional rights under color of law against Craig Coffee in his official capacity as former head of the Code Division for Desoto County, Florida.

118. Plaintiffs re-allege and re-affirm paragraphs 1 through 10 and 21 through 116 as common to all counts and as if fully re written herein.

119. The constitution of the United States of America protects individual citizens right to due process and equal protection.

120. The conduct described herein was accomplished in bad faith with a malicious purpose and in a manner exhibiting a wanton, willful disregard for human rights, safety

39

and property or otherwise acted outside the scope of their employment, that the governing immunity of Section 768.28 Florida Statutes does not apply.

121. Defendant Craig Coffee's official conduct was deliberate and was performed in such a reckless and outrageous nature as to cause mental and monetary suffering upon the Plaintiffs.

122. As a direct and proximate result of Defendant Coffee's official actions under color of law and violating the Counties own official written procedures now constituting a widespread policy and custom by it's usage over time, Plaintiffs have suffered damages and continue to suffer damages.

123. At all times material to this lawsuit Defendant Craig Coffee in his official capacity was deliberately violating Plaintiff's clearly established constitutional rights under the fourteenth amendment to the constitution of the United States as plead in this Complaint.

124. Plaintiffs intend to hire an attorney to plead this matter at a jury trial and will be obligated to pay for their services.

WHEREFORE Plaintiffs Delaet, Clark and Callaway demand judgment against Craig Coffee in his official capacity as head of the code division for Desoto County, Florida for the maximum allowed under state guidelines and cap for such a tort claim plus all costs and attorney fees pursuant to 43 USC § 1988 for each named Plaintiff.

## COUNT II
## DEPRIVATION OF CONSTITUTIONAL RIGHTS UNDER COLOR OF LAW
### Lester Hornbake as head of Building and Zoning for Desoto County, Florida

125. This is an action for deprivation of constitutional rights under color of law

40

against Lester Hornbake in his official capacity as head of the Building and Zoning for Desoto County, Florida.

126. Plaintiffs re-allege and re-affirm paragraphs 1 through 9, 12 and 21 through 116 as common to all counts and as if fully re written herein.

127. The constitution of the United States of America protects individual citizens right to due process and equal protection.

128. The conduct described herein was accomplished in bad faith with a malicious purpose and in a manner exhibiting a wanton, willful disregard for human rights, safety and property or otherwise acted outside the scope of their employment, that the governing immunity of Section 768.28 Florida Statutes does not apply.

129. Defendant Lester Hornbake's official conduct was deliberate and was performed in such a reckless and outrageous nature as to cause mental and monetary suffering upon the Plaintiffs Clark and Callaway.

130. As a direct and proximate result of Defendant Hornbake's official actions under color of law and violating the Counties own official written procedures now constituting a widespread policy and custom by it's usage over time, Plaintiffs have suffered damages and continue to suffer damages.

131. At all times material to this lawsuit Defendant Lester Hornbake in his official capacity was deliberately violating Plaintiffs' clearly established constitutional rights under the fourteenth amendment to the constitution of the United States as plead in this Complaint.

132. Plaintiffs intend to hire an attorney to plead this matter at a jury trial and will

41

be obligated to pay for their services.

WHEREFORE Plaintiffs Delaet, Clark and Callaway demand judgment against Lester Hornbake in his official capacity as head of Code Division for Desoto County, Florida for the maximum allowed under state guidelines and cap for such a tort claim plus all costs and attorney fees pursuant to 42 USC § 1988 for each named Plaintiff.

### COUNT III
### DEPRIVATION OF CONSTITUTIONAL RIGHTS UNDER COLOR OF LAW
### Jorge Hernandez as new head of the Code Division for Desoto County, Florida

133. This is an action for deprivation of constitutional rights under color of law against Jorge Hernandez as new head of the Code Division for Desoto County, Florida.

134. Plaintiffs re-allege and re-affirm paragraphs 1 through 10, 12 and 21 through 116 as common to all counts and as if fully re written herein.

135. The constitution of the United States of America protects individual citizens right to due process and equal protection.

136. The conduct described herein was accomplished in bad faith with a malicious purpose and in a manner exhibiting a wanton, willful disregard for human rights, safety and property or otherwise acted outside the scope of their employment, that the governing immunity of Section 768.28 Florida Statutes does not apply.

137. Defendant Jorge Hernandez's official conduct was deliberate and was performed in such a reckless and outrageous nature as to cause mental and monetary suffering upon the Plaintiffs.

138. As a direct and proximate result of Defendant Hernandez's official actions under color of law and violating the Counties own official written procedures now

42

constituting a widespread policy and custom by it's usage over time, Plaintiffs have suffered damages and continue to suffer damages.

139. At all times material to this lawsuit Defendant Jorge Hernandez in his official capacity was deliberately violating Plaintiffs' clearly established constitutional rights under the fourteenth amendment to the constitution of the United States as plead in this Complaint.

140. Plaintiffs intend to hire an attorney to plead this matter at a jury trial and will be obligated to pay for their services.

WHEREFORE Plaintiffs Delaet, Clark and Callaway individually demand judgment against Lester Hornbake in his official capacity as head of Code Division for Desoto County, Florida for the maximum allowed under state guidelines and cap for such a tort claim plus all costs and attorney fees pursuant to 42 USC § 1988 for each named Plaintiff.

## COUNT IV
## DEPRIVATION OF CONSTITUTIONAL RIGHTS UNDER COLOR OF LAW
### Craig Coffee Individually

141. This is an action for deprivation of constitutional rights under color of law against Craig Coffee individually.

142. Plaintiffs re-allege and re-affirm paragraphs 1 through 5,7, 13 and 21 through 116 as common to all counts and as if fully re written herein.

143. The constitution of the United States of America protects individual citizens right to due process and equal protection.

144. The conduct described herein was accomplished in bad faith with a malicious

43

purpose and in a manner exhibiting a wanton, willful disregard for human rights, safety and property or otherwise acted outside the scope of their employment, that the governing immunity of Section 768.28 Florida Statutes does not apply.

145. Defendant Craig Coffee's individual conduct was deliberate and was performed in such a reckless and outrageous nature as to cause mental and monetary suffering upon the Plaintiffs.

146. As a direct and proximate result of Defendant Coffee's individual actions under color of law Plaintiffs have suffered damages and continue to suffer damages.

147. At all times material to this lawsuit Defendant Coffee in his official capacity was deliberately violating Plaintiffs' clearly established constitutional rights under the fourteenth amendment to the constitution of the United States as plead in this Complaint.

148. Plaintiffs intend to hire an attorney to plead this matter at a jury trial and will be obligated to pay for their services.

WHEREFORE Plaintiffs Delaet, Clark and Callaway demand judgment for:

A. Compensation for mental emotional suffering, humiliation, degradation and property damage in the amount of five million dollars for each named Plaintiff.

B. Medical expenses, past present and future in the amount of five million dollars for each named Plaintiff.

C. Loss of earnings and ability to earn in the future in the amount of five million dollars for each named Plaintiff.

D. Punitive damages five million dollars for each named Plaintiff.

E. Costs and attorney fees pursuant to 42 USC § 1988

44

F. Any other such relief deemed just and appropriate by a jury or the court.

## COUNT V
## DEPRIVATION OF CONSTITUTIONAL RIGHTS UNDER COLOR OF LAW
### Lester Hornbake Individually

149. This is an action for deprivation of constitutional rights under color of law against Lester Hornbake individually under color of law.

150. Plaintiffs re-allege and re-affirm paragraphs 1 through 5,7, 8, 9, 16 and 21 through 116 as common to all counts and as if fully re written herein.

151. The constitution of the United States of America protects individual citizens right to due process and equal protection.

152. The conduct described herein was accomplished in bad faith with a malicious purpose and in a manner exhibiting a wanton, willful disregard for human rights, safety and property or otherwise acted outside the scope of their employment, that the governing immunity of Section 768.28 Florida Statutes does not apply.

153. Defendant Lester Hornbake's individual conduct was deliberate and was performed in such a reckless and outrageous nature as to cause mental and monetary suffering upon the Plaintiffs Clark, Delaet, and Callaway.

154. As a direct and proximate result of Defendant Hornbake's individual actions under color of law Plaintiffs have suffered damages and continue to suffer damages.

155. At all times material to this lawsuit Defendant Hornbake in his official capacity was deliberately violating Plaintiffs' clearly established constitutional rights under the fourteenth amendment to the constitution of the United States as plead in this Complaint.

45

156. Plaintiffs intend to hire an attorney to plead this matter at a jury trial and will be obligated to pay for their services.

WHEREFORE Plaintiffs Delaet, Clark and Callaway demand judgment for

A. Compensation for mental emotional suffering, humiliation, degradation and property damage in the amount of five million dollars for each named Plaintiff.

B. Medical expenses, past present and future in the amount of five million dollars for each named Plaintiff.

C. Loss of earnings and ability to earn in the future in the amount of five million dollars for each named Plaintiff.

D. Punitive damages five million dollars for each named Plaintiff.

E. Costs and attorney fees pursuant to 42 USC § 1988 for each named.

F. Any other such relief deemed just and appropriate by a jury or the court.

**COUNT VI**
**DEPRIVATION OF CONSTITUTIONAL RIGHTS UNDER COLOR OF LAW**
**Jorge Hernandez Individually**

157. This is an action for deprivation of constitutional rights under color of law against Jorge Hernandez individually under color of law

158. Plaintiffs re-allege and re-affirm paragraphs 1 through 5, 7, 8, 9,15 and 21 though 116 as common to all counts and as if fully re written herein.

159. The constitution of the United States of America protects individual citizens right to due process and equal protection.

160. The conduct described herein was accomplished in bad faith with a malicious purpose and in a manner exhibiting a wanton, willful disregard for human rights, safety

46

and property or otherwise acted outside the scope of their employment, that the governing immunity of Section 768.28 Florida Statutes does not apply.

161. Defendant Jorge Hernandez's individual conduct was deliberate and was performed in such a reckless and outrageous nature as to cause mental and monetary suffering upon the Plaintiffs.

162. At all times material to this lawsuit Defendant Hernandez in his official capacity was deliberately violating Plaintiffs' clearly established constitutional rights under the fourteenth amendment to the constitution of the United States as plead in this Complaint.

163. As a direct and proximate result of Defendant Hernandez's individual actions under color of law Plaintiffs have suffered damages and continue to suffer damages.

164. Plaintiffs intend to hire an attorney to plead this matter at a jury trial and will be obligated to pay for their services.

WHEREFORE Plaintiffs demand judgment for

A. Compensation for mental emotional suffering, humiliation, degradation and property damage in the amount of five million dollars for each named Plaintiff.

B. Medical expenses, past present and future in the amount of five million dollars, for each named plaintiff..

C. Loss of earnings and ability to earn in the future in the amount of five million dollars for each named Plaintiff

D. Punitive damages five million dollars for each named plaintiff

E. Costs and attorney fees pursuant to 42 USC § 1988

47

F. Any other such relief deemed just and appropriate by a jury or the court.

## COUNT VII
## DEPRIVATION OF CONSTITUTIONAL RIGHTS UNDER COLOR OF LAW
### Shelia Sapp Individually

165. This is an action for deprivation of constitutional rights under color of law against Shelia Sapp individually under color of law

166. Plaintiffs re-allege and re-affirm paragraphs 1 through 5, 7, 8, 9, 14 and 21 through 116 as common to all counts and as if fully re written herein.

167. The constitution of the United States of America protects individual citizens right to due process and equal protection.

168. The conduct described herein was accomplished in bad faith with a malicious purpose and in a manner exhibiting a wanton, willful disregard for human rights, safety and property or otherwise acted outside the scope of their employment, that the governing immunity of Section 768.28 Florida Statutes does not apply.

169. Defendant Shelia Sapp's individual conduct was deliberate and was performed in such a reckless and outrageous nature as to cause mental and monetary suffering upon the Plaintiffs.

170. At all times material to this lawsuit Defendant Sapp in her official capacity was deliberately violating Plaintiffs' clearly established constitutional rights under the fourteenth amendment to the constitution of the United States as plead in this Complaint.

171. As a direct and proximate result of Defendant Sapp's individual actions under color of law Plaintiffs have suffered damages and continue to suffer damages.

172. Plaintiffs intend to hire an attorney to plead this matter at a jury trial and will

48

be obligated to pay for their services.

WHEREFORE Plaintiffs demand judgment for

A. Compensation for mental emotional suffering, humiliation, degradation and property damage in the amount of five million dollars for each named plaintiff.

B. Medical expenses, past present and future in the amount of five million dollars for each named Plaintiff

C. Loss of earnings and ability to earn in the future in the amount of five million dollars for each named Plaintiff

D. Punitive damages five million dollars for each named Plaintiff

E. Costs and attorney fees pursuant to 42 USC § 1988

F. Any other such relief deemed just and appropriate by a jury or the court.

## COUNT VIII
## DEPRIVATION OF CONSTITUTIONAL RIGHTS UNDER COLOR OF LAW
### Kimberly Routt Individually

173. This is an action for deprivation of constitutional rights under color of law against Kimberly Routt individually.

174. Plaintiffs re-allege and re-affirm paragraphs 1 through 5, 7, 8, 9, 17 and 21 through 116 as common to all counts and as if fully re written herein.

175. The constitution of the United States of America protects individual citizens right to due process and equal protection.

176. The conduct described herein was accomplished in bad faith with a malicious purpose and in a manner exhibiting a wanton, willful disregard for human rights, safety and property or otherwise acted outside the scope of their employment, that the governing

49

immunity of Section 768.28 Florida Statutes does not apply.

177. Defendant Kimberly Routt's individual conduct was deliberate and was performed in such a reckless and outrageous nature as to cause mental and monetary suffering upon the Plaintiffs.

178. Plaintiff Delaet's Dirt Cheap Enterprises Business (Exhibit "W") would have been open if Kimberley Routt had not illegally interfered and Plaintiff estimates a loss of $500.00 for every day her business is un-open as a result of a deficient illegal stop work order.

179. Defendant Routt had no right or job duty to come onto the owner permitted job site of Plaintiffs. Florida Statutes 489.103(7) (Exhibit "6") states "Owners of property when acting as their own contractor and providing direct, onsite supervision themselves of all work not performed by licenses contractors" This is what the Plaintiffs are and have done all the work themselves and have no other contractors or workers and demand strict proof to the contrary like pay records, names addresses, phone number etc.

180. There is no qualified immunity that exists where Defendants conduct violates clearly established Federal statutory or constitutional rights or those who knowingly violate state and Federal laws like Defendant Routt did.

181. On February 24, 2009 there were no employees on the property to supervise. Clark and Callaway were doing all the work themselves and were working together, no need to supervise each other.

182. There were never any Hispanics, illegal immigrants nor anyone else on the roof of plaintiffs building earlier in the morning on February 24, 2009 as Routt and Green

50

stated. This was just another fabricated lie she made up just like the rest of her fabricated

claims, made up to give rise to some kind of pre manufactured authority to come on to the

job site and harass Plaintiffs. Plaintiffs demand strict proof of her fabricated statements.

183. Defendants Routt after Clark and Callaway refused to listen to her fabricated

story and told her they had no employees or workers other than each other and then told

her to hit the road that she had no legal reason to be there under Florida Statutes

489.103(7) (Exhibit "6") and finally had a sheriff deputy tell her to get off of Plaintiffs

property.

184. When the Sheriff Deputy told Routt to remove herself from Plaintiffs

property and verified that there were no workers on the property other than Clark. This

made Kimberly Routt very mad. She thought Clark and Callaway would just fold over

and let her and Green bulldog over them and listen to her absolute  lies. Clark and

Callaway had the law including a copy of Florida Statues 489.103(7) and told Routt to hit

the road and as soon as she spoke and told Plaintiffs she had been down to see Lester

Hornbake that day prior to coming to the job site and when she got on their phone and

called Lester Hornbake for assistance, it was apparent to the Plaintiffs that Lester

Hornbake was the one that had sent them to start with and they were there strictly to

harass and damage the Plaintiffs..

185. This prompted the stop work order Routt was going to show Plaintiffs their

power and authority and shut this little job down. (Exhibit "1")

186. Defendant Routt knew that had gone way over the bounds of decency and

their job duties and needed to cover her ass from her DBPR supervisors.

51

187. A little over a week later these two DBPR workers filed a notice of a possible violation of contracting without a license. (Exhibits "2","4","7","8")The alleged probable cause was nothing but a premeditated fabrication of the phantom Mexican or illegal they allegedly had seen early on February 24, 2009. No one but Clark and Callaway were working on the building at any time that day.

188. These fabrications and lies were made by Routt to cover her butt and was so lacking in indicia of probable cause as to realistically render a legitimate belief of it's existence, totally unreasonable for a probable cause panel or to shield immunity.

189. Defendant Routt to aid and assist Lester Hornbake individually and officially as Desoto County government in creating and causing more damages to the Plaintiffs knowingly drafted, fabricated and filed false complaints and reports against Plaintiffs which further damaged the Plaintiffs mentally and monetarily.

190. Defendant Routt knew her underlying indicia for probable cause information was false because she along with co-conspirator Lester Hornbake individually and officially fabricated the entire story and complaints and made up false evidence to support their made up story through unscrupulous means.

191. Plaintiffs have never had any employees or workers doing any work, the only people doing any work on the building has been the Plaintiffs Clark and Callaway. Plaintiffs supervise one another, Plaintiffs are exempt for providing themselves with workers compensation insurance and since they are not paying themselves they are not responsible to take out FICA or any other tax deductions on themselves. The existing and controlling law for an owner permitted builder under these circumstances is Florida

52

Statutes 489.103(7). (Exhibit "6") Kimberley Routt knew this and knew she had no legal

business, probable cause or jurisdiction under the controlling Florida law to bother, harass

and especially to stop the work, with a stop work order providing no forum or legal

avenue for plaintiffs to redress all of the defendants wrongful and unscrupulous actions.

Defendant Routt was no doubt lured and enticed by the Desoto County Defendants,

boasting and telling her she was immune form prosecution and bullet proof from civil

litigation and how Desoto County as a fellow agency really needed her assistance and

help for a problem that just wouldn't go away without a push.

192. There are good and bad apples in all levels of government and state agencies,

you hear in the news daily that police officers are being arrested for child molestations,

theft, abusing their power and authority, the FBI more of the same and charges like fraud

and perjury these officials all had immunity to carry out their discretionary job duties

without the fear of personal liability but that immunity didn't apply or stand up when

these bad apples began violating established laws, that's why the government and state

provides exceptions to the immunity entitlement, to be able to rid the system of these bad

apples and these exceptions apply in this case. Kimberley Routt had no valid right or duty

to interfere and lied and manufactured a story about phantom illegal Mexicans being

employed to work on this permitted job, a complete lie that Plaintiffs demand strict proof

of which is impossible since there were no workers only the Plaintiffs Clark and

Callaway.

193. The state does not shield government actors who think they are bullet proof

from litigation and who willfully with the specific intent to violate their own procedures

53

and join an overt conspiracy with state co-agency buddies and maliciously commit fraud, fabricate false complaints and reports to falsely defame and cause a citizen to be subjected to wrongful and malicious prosecution civil and criminal. This is one of those cases where government actors have no shield against claims made against them in their individual capacities. Because the acts of Defendant Routt are so obviously wrong in light of pre existing law, that only a plainly incompetent officer or one who knowingly intended to violate the law would have done such a thing.

194. The state of Florida goes only so far then the judicial immunity stops for certain conduct and for those who knowingly go over and above their authority like Defendant Kimberley Routt has.

195. The "incident" with Defendant Routt was not legitimate and was a premeditated and preplanned ruse, there were no employees or workers of any kind to give rise to Defendant Green's official involvement. Lester Hornbake and Green fabricated the illegal Mexican seen on the roof story in advance to show cause for Hornbake sending them to the fully permitted job suite for the purpose of harassment and damages.

196. Defendant Kimberley Routt was solicited by Lester Hornbake to commit acts under her official capacity under color of law to without a shred of probable cause help Hornbake and Desoto County shut down an owner permitted repair job to retaliate for Plaintiffs suing Desoto County and to willfully and maliciously cause severe damage to Plaintiffs and also violate their constitutional rights under he 14th amendment to due process at the same time.

54

197. It is and has been well settled that fabricating false evidence, procuring perjury, creating and manufacturing false reports and perjured affidavits which could lead to a citizen's arrest and prosecution exactly Defendant Routt has done would clearly violate a persons clearly established rights.

198. Defendant Routt was not performing any of her job duties pursuant to the limited written job procedures on February 24, 2009 when she instigated an "incident" with Plaintiffs causing severe damage mentally and monetarily.

199. Defendant Routt must prove that she was within the scope of her authority. Plaintiffs can see no way possible for Defendant Routt to do this since an owner permit with no employees or workers to supervise is an absolute exemption under Florida Statues 489.103(7) attached as Exhibit "6", Defendant Green in order to show that she acted within the scope of her authority must demonstrate objective circumstances which would dispute Plaintiff absolute exemption and compel a conclusion that the action taken on February 24, 2009 were undertaken pursuant to the performance of her duties and within the scope of her limited authority and that just can't be done because no state agency, Desoto county government or the DBPR can refuse to provide a citizen with a forum for redress and due process.

200. The Fourteenth amendment to the constitution of the united states of America explicitly guarantees to every citizen that no state shall "deprive any person of life liberty or property without due process of law" This lawsuit is proper as the Plaintiffs have been completely denied any due process guaranteed under the fourteenth amendment by Kimberley Routt who willfully refused and did not provide plaintiffs with

55

a court or other legal forum.

201. Plaintiffs also specifically allege that the defendant Routt's also violated Plaintiffs fourteenth amendment rights, identifying a specific and clearly established constitutional right.

202. As a direct and proximate result of Defendant Routt's individual actions under color of law Plaintiffs have suffered damages and continue to suffer damages.

203. Plaintiffs intend to hire an attorney to plead this matter at a jury trial and will be obligated to pay for their services.

WHEREFORE Plaintiffs demand judgment for:

A. Compensation for mental emotional suffering, humiliation, degradation and property damage in the amount of five million dollars for each named Plaintiff.

B. Medical expenses, past present and future in the amount of five million dollars for each named Plaintiff

C. Loss of earnings and ability to earn in the future in the amount of five million dollars for each named Plaintiff

D. Punitive damages five million dollars for each named Plaintiff

E. Costs and attorney fees pursuant to 42 USC § 1988

F. Any other such relief deemed just and appropriate by a jury or the court.

## COUNT IX
## DEPRIVATION OF CONSTITUTIONAL RIGHTS UNDER COLOR OF LAW
### Sandra Green Individually

204. This is an action for deprivation of constitutional rights under color of law against Sandra green individually.

56

205. Plaintiffs re-allege and re-affirm paragraphs 1 through 5,7,8,9,18 and 21 through 116 as common to all counts and as if fully re written herein.

206. The constitution of the United States of America protects individual citizens right to due process and equal protection.

207. The conduct described herein was accomplished in bad faith with a malicious purpose and in a manner exhibiting a wanton, willful disregard for human rights, safety and property or otherwise acted outside the scope of their employment, that the governing immunity of Section 768.28 Florida Statutes does not apply.

208. Defendant Sandra Green's individual conduct was deliberate and was performed in such a reckless and outrageous nature as to cause damage and mental and monetary suffering upon the Plaintiffs.

209. Plaintiff DeLaet's Dirt Cheap Enterprises Business (Exhibit "W") would have been open if Sandra Green had not illegally interfered and Plaintiff estimates a loss of $500.00 for every day her business is un-open as a result of a deficient illegal stop work order.

210. Defendant Sandra Green had no right or job duty to come onto the owner permitted job site of Plaintiffs. Florida Statutes 489.103(7) states (Exhibit "6") "Owners of property when acting as their own contractor and providing direct, onsite supervision themselves of all work not performed by licenses contractors" This is what the Plaintiffs are and have done all the work themselves and have no other contractors or workers and demand strict proof to the contrary like pay records, names addresses, phone number etc.

211. There is no qualified immunity that exists where Defendants conduct violates

57

clearly established Federal statutory or constitutional rights or those who knowingly violate state and Federal laws like Defendant Green did.

212. On February 24, 2009 there were no employees on the property to supervise. Clark and Callaway were doing all the work themselves and were working together, no need to supervise each other.

213. There were never any Hispanics, illegal immigrants nor anyone else on the roof of plaintiffs building earlier in the morning on February 24, 2009 as Routt and Green stated. This was just another fabricated lie she made up just like the rest of her fabricated claims, made up to give rise to some kind of pre manufactured authority to come on to the job site and harass Plaintiffs. Plaintiffs demand strict proof of her fabricated statements.

214. Defendants Green after Clark and Callaway refused to listen to her fabricated story and told her they had no employees or workers other than each other and then told her to hit the road that she had no legal reason to be there under Florida Statutes 489.103(7) (Exhibit "6") and finally had a sheriff deputy tell her to get off of Plaintiffs property.

215. When the Sheriff Deputy told Green to remove herself from Plaintiffs property and verified that there were no workers on the property other than Clark. This made Sandra Green very mad. She thought Clark and Callaway would just fold over and let her and Routt bulldog over them and listen to her absolute  lies. Clark and Callaway had the law including a copy of Florida Statues 489.103(7) (Exhibit "6") and told Green to hit the road and as soon as she spoke and told Plaintiffs she had been down to see Lester Hornbake that day prior to coming to the job site and when she got on their phone

58

and called Lester Hornabke for assistance, it was apparent to the Plaintiffs that Lester Hornbake was the one that had sent them to start with and they were their strictly to harass and damage the Plaintiffs.

216. This prompted the stop work order Green was going to show Plaintiffs their power and authority and shut this little job down.

217. Defendant Green knew that had gone way over the bounds of decency and their job duties and needed to cover her ass from her DBPR supervisors.

218. A little over a week later these two DBPR workers filed a notice of a possible violation of contracting without a license. (Exhibits "2","4", "7", "8") The alleged probable cause was nothing but a premeditated fabrication of the phantom Mexican or illegal they allegedly had seen early on February 24, 2009. No one but Clark and Callaway were working on the building at any time that day.

219. These fabrications and lies were made by Green to cover her but and was so lacking in indicia of probable cause as to realistically render a legitimate belief of it's existence, totally unreasonable for a probable cause panel or to shield immunity.

220. Defendant Green to aid and assist Lester Hornbake individually and officially as Desoto County government in creating and causing more damages to the Plaintiffs knowingly drafted, fabricated and filed false complaints and reports against Plaintiffs which further damaged the Plaintiffs mentally and monetarily.

221. Defendant Green knew her underlying indicia for probable cause information was false because she along with co-conspirator Lester Hornbake individually and officially fabricated the entire story and complaints and made up false evidence to support

59

their made up story through unscrupulous means.

222. Plaintiffs have never had any employees or workers doing any work, the only people doing any work on the building has been the Plaintiffs Clark and Callaway. Plaintiffs supervise one another, Plaintiffs are exempt for providing themselves with workers compensation insurance and since they are not paying themselves they are not responsible to take out FICA or any other tax deductions on themselves. The existing and controlling law for an owner permitted builder under these circumstances is Florida Statutes 489.103(7). (Exhibit "6") Sandra Green knew this and knew she had no legal business, probable cause or jurisdiction under the controlling Florida law to bother, harass and especially to stop the work, with a stop work order providing no forum or legal avenue for plaintiffs to redress all of the defendants wrongful and unscrupulous actions. Defendant Green was no doubt lured and enticed by the Desoto County Defendants, boasting and telling her she was immune form prosecution and bullet proof from civil litigation and how Desoto County as a fellow agency really needed her assistance and help for a problem that just wouldn't go away without a push.

223. There are good and bad apples in all levels of government and state agencies, you hear in the news daily that police officers are being arrested for child molestations, theft, abusing their power and authority, the FBI more of the same and charges like fraud and perjury these officials all had immunity to carry out their discretionary job duties without the fear of personal liability but that immunity didn't apply or stand up when these bad apples began violating established laws, that's why the government and state provides exceptions to the immunity entitlement, to be able to rid the system of these bad

60

apples and these exceptions apply in this case. Sandra Green had no valid right or duty to interfere and lied and manufactured a story about phantom illegal Mexicans being employed to work on this permitted job, a complete lie that Plaintiffs demand strict proof

224. The state does not shield government actors who think they are bullet proof from litigation and who willfully with the specific intent to violate their own procedures and join an overt conspiracy with state co-agency buddies and maliciously commit fraud, fabricate false complaints and reports to falsely defame and cause a citizen to be subjected to wrongful and malicious prosecution civil and criminal. This is one of those cases where government actors have no shield against claims made against them in their individual capacities. Because the acts of Defendant Green are so obviously wrong in light of pre existing law, that only a plainly incompetent officer or one who knowingly intended to violate the law would have done such a thing.

225. The state of Florida goes only so far then the judicial immunity stops for certain conduct and for those who knowingly go over and above their authority like Defendant Sandra Green has.

226. The "incident" with Defendant Green was not legitimate and was a premeditated and preplanned ruse, there were no employees or workers of any kind to give rise to Defendant Green's official involvement. Lester Hornbake and Green fabricated the illegal Mexican seen on the roof story in advance to show cause for Hornbake sending them to the fully permitted job suite for the purpose of harassment and damages.

227. Defendant Sandra Green was solicited by Lester Hornbake to sue their

61

official capacity under color of law to without a shred of probable cause help Hornbake and Desoto County shut down an owner permitted repair job to retaliate for Plaintiffs suing Desoto County and to willfully and maliciously cause severe damage to Plaintiffs and also violate their constitutional rights under he 14th amendment to due process at the same time.

228. It is and has been well settled that fabricating false evidence, procuring perjury, creating and manufacturing false reports and perjured affidavits which could lead to a citizen's arrest and prosecution exactly Defendant Green has done would clearly violate a persons clearly established rights.

229. Defendant Green was not performing any of her job duties pursuant to the limited written job procedures on February 24, 2009 when she instigated an "incident" with Plaintiffs causing severe damage mentally and monetarily.

230. Defendant Green must prove that she was within the scope of her authority. Plaintiffs can see no way possible for Defendant Green to do this since an owner permit with no employees or workers to supervise is an absolute exemption under Florida Statues 489.103(7) attached as Exhibit "6", Defendant Green in order to show that she acted within the scope of her authority must demonstrate objective circumstances which would dispute Plaintiff absolute exemption and compel a conclusion that the action taken on February 24, 2009 were undertaken pursuant to the performance of her duties and within the scope of her limited authority and that just can't be done because no state agency, Desoto county government or the DBPR can refuse to provide a citizen with a forum for redress and due process.

62

231. The Fourteenth amendment to the constitution of the united states of America explicitly guarantees to every citizen that no state shall "deprive any person of life liberty or property without due process of law" This lawsuit is proper as the Plaintiffs have been completely denied any due process guaranteed under the fourteenth amendment by Sandra Green who willfully refused and did not provide plaintiffs with a court or other legal forum.

232. Plaintiffs also specifically allege that the defendant Green's conduct also violated Plaintiffs fourteenth amendment rights, identifying a specific and clearly established constitutional right.

233.  As a direct and proximate result of Defendant Green's individual actions under color of law Plaintiffs have suffered damages and continue to suffer damages.

234. Plaintiffs intend to hire an attorney to plead this matter at a jury trial and will be obligated to pay for their services.

WHEREFORE Plaintiffs demand judgment for

A. Compensation for mental emotional suffering, humiliation, degradation and property damage in the amount of five million dollars for each Plaintiff.

B. Medical expenses, past present and future in the amount of five million dollars for each plaintiff.

C. Loss of earnings and ability to earn in the future in the amount of five million dollars for each plaintiff

D. Punitive damages five million dollars for each plaintiff

E. Costs and attorney fees pursuant to 42 USC § 1988

63

F. Any other such relief deemed just and appropriate by a jury.

## COUNT X
## DEPRIVATION OF CONSTITUTIONAL RIGHTS
## KEN KOHN INDIVIDUALLY

236. This is an action for deprivation of constitutional rights under color of law against Ken Kohn Individually.

237. Plaintiffs re allege and re-affirm paragraphs 1-5, 7, 8, 9, 20 and 21 through 116 as common to all counts and as if fully re-written herein.

238. The constitution of the United States of America protects individual citizens rights to due process and equal protection.

239. The conduct described herein was accomplished in bad faith with a malicious purpose and in a manner exhibiting a willful disregard for human rights, safety and property or otherwise acted outside the course and scope of his employment, that the governing immunity or sovereign immunity of Florida Statues dose not apply.

240. Defendant Ken Kohn's individual conduct was deliberate and was performed in such a reckless and outrageous manner as the cause damages and metal and monetary suffering upon all the Plaintiffs.

241. At all times material to this lawsuit Defendant Ken Kohn in his official capacity was deliberately violating Plaintiffs clearly established constitutional rights under the Fourteenth Amendment to the Constitution of the United States as plead in this complaint.

242. Defendant Ken Kohn Individually entered into an overt conspiracy with Craig Coffee, Lester Hornbake, Jorge Hernandez of Desoto County Code Enforcement to

64

use the alias, alter ego, name Jimmy Dees to fabricate a false untrue report and complaint

of hazardous waste and oils and toxic contaminants being dumped on Plaintiffs properties

in Desoto County to get and promote other State funded agencies to start undue action

against the Plaintiffs to cause them severe damage in defending. See Exhibits reports and

complaints as Exhibits "5"and "T".

243. There is no qualified immunity that exists where Defendants conduct violates

clearly established Federal Statutory or constitutional rights or those who knowingly

violate state and federal law like Defendant Ken Kohn willfully chose to do.

244. Defendant Ken Kohn individually to aid and assist Lester Hornbake, Craig

Coffee and Jorge Hernandez and Desoto County Government, he aided and abetted and

assisted them in creating and causing more damages to Plaintiffs. Together they

knowingly drafted and fabricated and willfully filed complaints and reports they knew to

be false and untrue against the Plaintiffs which further damages the Plaintiffs mentally

and monetarily.

245. Defendant Ken Kohn knew that these reports and complaints were false and

fabricated with his assistance, as a willful co-conspirator with Desoto County

Defendant's Lester Hornbake, Craig Coffee and Jorge Hernandez and their alter ego

Jimmy Dees. He choose to be a co-conspirator with this group of defendants.

246. Defendant Ken Kohn knew that the fabricated lies about the Plaintiffs were

so lacking in any indicia of probable cause as to realistically render a legitimate belief of

the existence of any authenticated violation, totally unreasonable for any probable cause

or to shield immunity but Ken Kohn sends these fabricated violation reports and

65

complaints to Rick Cantrell as legitimate with instructions to take immediate action and falsely prosecute the Plaintiffs and Rick Camtrell did just that, falsely arrested Clark and threatened Callaway with arrest if she didn't immediately get rid of Plaintiff Delaet and the Bankruptcy estate and Plans vehicles or be arrested just like Clark but on 600 plus charges. A perfect plan executed by the Desoto County slick talkers who were aided and assisted by the State boys Ken Kohn and Rick Camtrell to further circumvent Plaintiff Delaet's Bankruptcy. With the aid of the state funded agency boys the Desoto County boys did circumvent the bankruptcy. The Desoto County Defendants are the slickest, poor mouth big talkers ever to breath and no doubt they lured and enticed Ken Kohn boosting and telling him that he was immune from prosecution and bullet proof from civil litigation and how Desoto County Government and Lester Hornbake, Craig Coffee, and Jorge Hernandez really needs their help for a problem with citizens that just wouldn't go away with out a push.

247. The State does not shield government actors who think that are bullet proof from litigation and who willfully with the specific intent to violate their own policies and procedures and join an overt conspiracy with co-state agency buddies and maliciously commit fraud, knowingly fabricate and or assist in and accept what he knew was a false and fabricated complaint and report to falsely defame and cause a citizen to be subjected to wrongful and malicious prosecution civil and criminal. This is one of those cases where government actors have no shield against claims made against them in their individual capacities, because the acts of Ken Kohn are so obviously wrong in light of pre-existing law, that only a plainly incompetent officer or one who knowingly intended

66

to violate the law would have taken such action.

248. Defendant Kohn knew that he had gone way over the bounds of decency and his job duties and need to cover his ass with his SWFWMD supervisors. That is why he had to let the cat out of the bag and tell Rick Camtrell that Jimmy Dees was a fictional person, the alter ego of the Desoto County Government and Hernandez, Coffee and Hornbake.

249. There are good and bad apples in all levels of government and state agencies you hear the news daily and police officers are being arrested for child molestations, theft abusing their power and authority, the FBI more of the same and charges like fraud and perjury these officials all had immunity to carry out their discretionary job duties without the fear of personal liability but that immunity didn't apply or stand up when these bad apples began violating established laws, that's why the government and state provides exceptions to the immunity entitlement, to be able to rid the system of these bad apples and these exceptions apply in this case.

250. The state of Florida goes only so far then the judicial immunity stops for certain conduct and for those who knowingly go over and above their authority like Defendant Ken Kohn has.

251. Defendant Ken Kohn was solicited by Defendants Craig Coffee, Lester Hornbake and Jorge Hernandez to use his state agency color of law status to help out a co-state agency being the Desoto County Government without a shred of actual probable cause but instead with pre meditated fabricated and false reports and complaints against the Plaintiffs, made and willfully filed strictly to lure, entice another state funded agency

67

to willful and maliciously cause severe damages to Plaintiffs falsely prosecuting them, and also violating their constitutional rights under the 14th amendment to due process at the same time.

252. The Fourteenth Amendment to the Constitution of the United States of America explicitly guarantees to every citizen that no state shall "deprive any person of life, liberty or property with due process of law" This lawsuit is proper as the Plaintiffs have been completely denied any due process guaranteed under the Fourteenth Amendment by Ken Kohn who willfully refused and did not provide the Plaintiffs with a Court or other legal forum to refute his fabricated reports.

253. Defendant Ken Kohn must prove that his actions were within the scope of his duties and employment. This Is not an automatic slam dunk way out especially now that the charges have been investigated by the DEP and there were simply no toxins or wastes being dumped, this whole fiasco was a hoax designed to malice the Plaintiffs.

254. It has been well settled that fabricating evidence, procuring perjury and manufacturing false reports, knowingly taking perjured complaints which could lead to a citizens arrest and false prosecution exactly as Defendant Kohn causes would clearly violate a persons clearly established rights.

255. As a direct and proximate result of Defendant Kohn's individual actions under color of law plaintiffs have suffered damages and continue to suffer damages.

256. Plaintiffs intend to hire an attorney to plead this matter at a jury trial and will be obligated to pay for their services.

WHEREFORE Plaintiffs demand judgment for:

68

A. Compensation for mental emotional suffering, humiliation, degradation and property damage in the amount of five million dollars for each named Plaintiff..

B. Medical expenses, past present and future in the amount of five million dollars for each named Plaintiff.

C. Loss of earnings and ability to earn in the future in the amount of five million dollars for each named Plaintiff.

D. Punitive damages five million dollars for each named Plaintiff.

E. Costs and attorney fees pursuant to 42 USC § 1988

F. Any other such relief deemed just and appropriate by a jury or the court.

## COUNT XI
## DEPRIVATION OF CONSTITUTIONAL RIGHTS
## RICK CAMTRELL INDIVIDUALLY

257. This is an action for deprivation of constitutional rights under color of law against Rick Camtrell Individually.

258. Plaintiffs re allege and re-affirm paragraphs 1-5, 7, 8, 9, 21, and 21 through 116 as common to all counts and as if fully re-written herein.

259. The constitution of the united states of America protects individual citizens rights to due process and equal protection.

260. The conduct described herein was accomplished in bad faith with a malicious purpose and in a manner exhibiting a willful disregard for human rights, safety and property or otherwise acted outside the course and scope of his employment, that the governing immunity or sovereign immunity of Florida Statues dose not apply.

261. Defendant Rick Camtrell's individual conduct was deliberate and was

69

performed in such a reckless and outrageous manner as the cause damages, mental and monetary suffering upon all the Plaintiffs.

262. Defendant Rick Camtrell Individually entered into an overt conspiracy with Ken Kohn, Craig Coffee, Lester Hornbake, Jorge Hernandez of Desoto County Code Enforcement to use the alias, alter ego, name Jimmy Dees to fabricate a false untrue report and complaint of hazardous waste and oils and toxic contaminants being dumped on Plaintiffs properties in Desoto County to get other State funded agencies to start undue action against the Plaintiffs to cause them severe damage in defending. See Exhibits reports and complaints as Exhibits "S" and "T".

263. In order to acquire results Kohn, Camtrell, South, Green, Routt all joined in as co-conspirators to add their participation under color of law.

264. There is no qualified immunity that exists where Defendants conduct violates clearly established Federal Statutory or constitutional rights or those who knowingly violate state and federal law like Defendant Rick Camtrell choose to do.

265. At all times material to this lawsuit Defendant Rick Camtrell in his official capacity was deliberately violating Plaintiffs clearly established constitutional rights under the Fourteenth Amendment to the Constitution of the United States as plead in this complaint.

266. Defendant Rick Camtrell individually chose to aid and assist Ken Kohn, Lester Hornbake, Craig Coffee and Jorge Hernandez and Desoto County Government, he aided and abetted and assisted them in illegally and wrongfully creating and causing more damages to Plaintiffs. Together they knowingly drafted and fabricated and willfully filed

70

complaints and reports they knew to be false and untrue against the Plaintiffs which further damages the Plaintiffs mentally and monetarily.

267. Defendant Rick Camtrell knew that these reports and complaints were false and fabricated with his assistance, he also knew he had gone over the bounds of any decency and over any resemblance of his job title and duties as a willful co-conspirator with Ken Kohn and Desoto County Defendant's Lester Hornbake, Craig Coffee and Jorge Hernandez and their alter ego Jimmy Dees. He choose to be a co-conspirator with this group of defendants.

268. It is supposed to be a good thing when one state agency jumps in to assist and help out another state agency but when it involves that agency director Rick Camtrell with fabricated and untrue complaints and reports, conspiracy and the violation of many well settled Florida and Federal laws that it is definitely not a good thing.

269. The Fourteenth Amendment to the constitution of the United States of America explicitly guarantees to every citizen that "no state shall deprive any person of life liberty or property without due process of law".

270. Defendant Rick Camtrell knew all along of the conspiracy that he choose to enter into, that the complaints he received from the alias alter ego Jimmy Dees were from Jorge Hernandez, Craig Coffee, Lester Hornbake and the Desoto County Government and that the conspiracy was made for the purpose of circumventing Plaintiff K. A. Dealer's bankruptcy. He was privy to the fact that the complaints were not true or authentic. Rick Camtrell was told by Ken Kohn from the SWFWMD that the complaints and reports were actually coming from Desoto County Code Enforcement and Coffee, Hornbake and

71

Hernandez and the reports and complaints were fabricated to enlist the DEP to use their state funded agency to maliciously prosecute un-cooperative citizens from Desoto County, that had Desoto County in a legal bind.

271. Defendant Rick Camtrell knew that the fabricated lies about the Plaintiffs were so lacking in any indicia of probable cause as to realistically render a legitimate belief of the existence of any authenticated violation, totally unreasonable for any

probable cause or to shield immunity. Rick Cantrell took immediate action and falsely prosecuted the Plaintiffs, falsely arrested Clark and threatened Callaway with arrest if she didn't immediately get rid of Plaintiff Delaet's and the Bankruptcy estate and Plans vehicles or be arrested just like Clark but on 600 plus charges.  A perfect plan executed by the Desoto County slick talkers who were aided and assisted by the State boys Ken Kohn and Rick Camtrell to further circumvent Plaintiff Deleat's Bankruptcy. With the aid of the state funded agency boys the Desoto County boys did circumvent and derail the bankruptcy. The Desoto County Defendants are the slickest, poor mouth big talkers ever to breath and no doubt they lured and enticed Ken Kohn boosting and telling him that he was immune from prosecution and bullet proof from civil litigation and how Desoto County Government and Lester Hornbake, Craig Coffee, and Jorge Hernandez really needs their help for a problem that just wouldn't go away with out a push.

272. Defendant Camtrell individually must prove that he was within the scope of his authority and that simply is not possible the state does not grant immunity for anyone, even Rick Camtrell, to without any resemblance of due process or probable cause, send

72

out his troops like the Calvary to falsely arrest Plaintiff Clark on fabricated false reports, threaten Callaway with arrest on 600 Plus felony charges if she did not immediately dispose of the bankruptcy estate property, being the vehicles of Plaintiff Deleat's active bankruptcy plan property that was fully protected under 11 USC 362a the automatic stay.

273. Plaintiff Clark who had an unblemished reputation and record with the state of Florida DMV and bonding company to maintain his Daughter K. A. Delaet's state licenses, was given an instant criminal record of felonies courtesy of Rick Camtrell. In today's economy it does not take even that much for a company and the DMV to cull a licensee especially when there is a 14 plus pages of arrest counts on the Public Records of Desoto County along with a barrage of bad publicity.  See Exhibit "U".

274. Rick Camtrell's solution for Desoto County Government's problems with the Plaintiffs herein was to wrongfully send out his DEP officers, throw Clark in jail, making him pay a big cash bond on 16 counts and threaten Plaintiff Callaway with the same and much more of the same to force her and Clark to rethink their un-cooperative positions. Forcing the Plaintiffs to think about just who they were messing with, forget all about having any type of constitutional rights and due process rights. Rick Camtrell meant to show the Plaintiffs herein that he was "GOD" and Plaintiffs could kiss his ass and like it or see just how much they liked jail on fabricated charges. See Exhibit "U"

275. There are no laws on the books anywhere that gives any man this kind of power or immunity to violate any citizens rights to this degree but there is the 14th amendment to the constitution of the United States of America that protects any citizen from this exact type of treatment.

73

276. The conduct of Rick Camtrell under color of law in violating the 14th amendment to the Constitution of the United States of America rendered the Plaintiffs unable to survive the vicious negative publicity, costly investigations, criminal defenses, slander of credit, and reputation and baseless destruction of Plaintiffs name reputation, loss of business, escalating health problems and mental suffering and forced all of the Plaintiffs into the final stage of financial ruin.

277. The State does not shield government actors who think that are bullet proof from litigation and who willfully with the specific intent to violate their own policies and procedures and join an overt conspiracy with co-state agency buddies and maliciously commit fraud, knowingly fabricate and or assist in and accept what he knew was a false and fabricated complaint and report to falsely defame and cause a citizen to be subjected to wrongful and malicious prosecution civil and criminal. This is one of those cases where government actors have no shield against claims made against them in their individual capacities, because the acts of Rick Camtrell are so obviously wrong in light of pre-existing law, that only a plainly incompetent officer or one who knowingly intended to violate the law would have taken such action.

278. Defendant Rick Camtrell was solicited by Defendants Craig Coffee, Lester Hornbake, Jorge Hernandez and Ken Kohn to use his state agency color of law status to help out a co-state agency being the Desoto County Government without a shred of actual probable cause but instead with pre meditated fabricated and false reports and complaints against the Plaintiffs, made and willfully filed strictly to lure, entice another state funded agency to willful and maliciously cause severe damages to Plaintiffs falsely prosecuting

74

them, and also violating their constitutional rights under the 14th amendment to due process at the same time.

279. There are good and bad apples in all levels of government and state agencies you hear the news daily and police officers are being arrested for child molestations, theft abusing their power and authority, the FBI more of the same and charges like fraud and perjury these officials all had immunity to carry out their discretionary job duties without the fear of personal liability but that immunity didn't apply or stand up when these bad apples began violating established laws, that's why the government and state provides exceptions to the immunity entitlement, to be able to rid the system of these bad apples and these exceptions apply in this case.

280. The state of Florida goes only so far then the judicial immunity stops for certain conduct and for those who knowingly go over and above their authority like Defendant Ken Kohn has.

281. It has been well settled that fabricating evidence, procuring perjury and manufacturing false reports, knowingly taking perjured complaints which could lead to a citizens arrest and false prosecution exactly as Defendant Camtrell caused would clearly violate a persons clearly established rights.

282. As a direct and proximate result of Defendant Camtrell's individual actions under color of law plaintiffs have suffered damages and continue to suffer damages.

283. Plaintiffs intend to hire an attorney to plead this matter at a jury trial and will be obligated to pay for their services.

WHEREFORE Plaintiffs demand judgment for:

75

A. Compensation for mental emotional suffering, humiliation, degradation and property damage in the amount of five million dollars for each named Plaintiff..

B. Medical expenses, past present and future in the amount of five million dollars for each named Plaintiff.

C. Loss of earnings and ability to earn in the future in the amount of five million dollars for each named Plaintiff.

D. Punitive damages five million dollars for each named Plaintiff.

E. Costs and attorney fees pursuant to 42 USC § 1988

F. Any other such relief deemed just and appropriate by a jury or the court.

## COUNT XII
## CONSPIRACY UNDER FLORIDA STATE LAW

284. This is an action for conspiracy against Defendants Coffee in his official capacity, Coffee Individually, Hornbake in his official capacity and Hornbake Individually, Hernandez in his official capacity and Hernandez Individually, Sapp Individually, Green Individually, Routt Individually, South individually, Ken Kohn individually and Rick Camtrell Individually.

285. Plaintiffs re-allege and re-affirm paragraphs 1,5,7 and 21 through 116 as if fully re-written herein.

286. All of the named defendants to this Count acted upon the directions of and in concert and conjunction with each other collectively and visa versa to jointly set out to maliciously and wrongfully cause severe mental and monetary damages and injury to Plaintiffs by violating Florida and Federal laws and by using unscrupulous means..

76

287.  All of the named Defendants to this Count spoke with and or communicated with one another collectively and visa versa with the joint express intent to falsely cause the Plaintiffs to be exposed to criminal and malicious prosecution.

288. Coffee, Hernandez, Hornbake and Kohn contacted surrounding state agencies for the purpose of making false and fabricated complaints to cause Plaintiffs to be falsely criminally prosecuted and cause them more damages to financially ruin them and wrecking their business relationships, leases and income at the same time.

289. Plaintiff Delaet's Dirt Cheap Enterprises Business (Exhibit "W") would have been open if Sandra Green had not illegally interfered and Plaintiff Delaet estimate a loss of $500.00 for every day her business is un-open as a result of a deficient illegal stop work order.

290. Defendant Green knew that had gone way over the bounds of decency and their job duties and needed to cover her ass from her DBPR supervisors.

291. A little over a week later these two DBPR workers filed notices of a possible violation of contracting without a license. (Exhibit "2", "4", "7","8") The alleged probable cause was nothing but a premeditated fabrication of the phantom Mexican or illegal they allegedly had seen early on February 24, 2009. No one but Clark and Callaway were working on the building at any time that day.

292. These fabrications and lies were made by Green to cover her but and was so lacking in indicia of probable cause as to realistically render a legitimate belief of it's existence, totally unreasonable for a probable cause panel or to shield immunity.

293. Defendant Green and Routt to aid and assist Lester Hornbake individually

77

and officially as Desoto County government in creating and causing more damages to the Plaintiffs knowingly drafted, fabricated and filed false complaints and reports against Plaintiffs which further damaged the Plaintiffs mentally and monetarily.

294. Defendant Green and Routt knew their underlying indicia for probable cause information was false because she along with co-conspirator Lester Hornbake individually and officially fabricated the entire story and complaints and made up false evidence to support their made up story through unscrupulous means.

295. One of these contacts, prompted by Coffee, Hernandez, Hornbake and Kohn resulted in the State of Florida Department of Environmental Protection in Tampa in an attempt to accommodate a fellow state agency as a courtesy acted on these false and fabricated complaints, made under color of law, by these Defendants and enlisted other people to knowingly make the same false complaints, arrested Plaintiff Clark and charged him with 16 criminal counts.

296. Defendant Ken Kohn individually to aid and assist Lester Hornbake, Craig Coffee and Jorge Hernandez and Desoto County Government, he aided and abetted and assisted them in creating and causing more damages to Plaintiffs. Together they knowingly drafted and fabricated and willfully filed complaints and reports they knew to be false and untrue against the Plaintiffs which further damages the Plaintiffs mentally and monetarily.

297. Defendant Ken Kohn knew that his reports and complaints were false and fabricated with his assistance, he also knew he had gone over the bounds of any decency and over any resemblance of his job title and duties as a willful co-conspirator with

78

Desoto County Defendant's Lester Hornbake, Craig Coffee and Jorge Hernandez and their alter ego Jimmy Dees. He choose to be a co-conspirator with this group of defendants.

298. Rick Camtrell without any resemblance of probable cause sent out his troops like the Calvary to falsely arrest Plaintiff Clark on fabricated false reports, threaten Callaway with arrest on 600 Plus felony charges if she did not immediately dispose of the bankruptcy estate property being the vehicles of Plaintiff Delaet's active bankruptcy plan property that was fully protected under 11 USC 362a the automatic stay.

299. Rick Camtrell's solution for Desoto County Government's problems with the Plaintiffs herein was to wrongfully send out his DEP officers, throw Clark in jail, making him pay a big cash bond on 16 counts (Exhibit "U" 14 pages) and threaten Plaintiff Callaway with the same and much more of the same to force her and Clark to rethink their un-cooperative positions. Forcing the Plaintiffs to think about just who they were messing with, forget all about having any type of constitutional rights and due process rights. Rick Camtrell meant to show the Plaintiffs herein that he was "GOD" and Plaintiffs could kiss his ass and like it or see just how much they liked jail on fabricated charges.

300. Defendant Rick Camtrell was solicited by Defendants Craig Coffee, Lester Hornbake, Jorge Hernandez and Ken Kohn to use his state agency color of law status to help out a co-state agency being the Desoto County Government without a shred of actual probable cause but instead with pre meditated fabricated and false reports and complaints against the Plaintiffs, made and willfully filed strictly to lure, entice another state funded

79

agency to willful and maliciously cause severe damages to Plaintiffs falsely prosecuting
them, and also violating their constitutional rights under the 14th amendment to due
process at the same time.

301. Defendant Rick Camtrell Individually entered into an overt conspiracy with
Ken Kohn, Craig Coffee, Lester Hornbake, Jorge Hernandez of Desoto County Code
Enforcement to use the alias, alter ego, name Jimmy Dees to fabricate a false untrue
report and complaint of hazardous waste and oils and toxic contaminants being dumped
on Plaintiffs properties in Desoto County to get other State funded agencies to start undue
action against the Plaintiffs to cause them severe damage in defending. See Exhibits
reports and complaints as Exhibits "S" and "T".

302. Plaintiff Clark who had an unblemished reputation and record with the state
of Florida DMV and bonding company to maintain his Daughter K. A. Delaet's state
licenses, was given an instant criminal record of felonies courtesy of Rick Camtrell. In
today's economy it does not take even that much for a company and the DMV to cull a
licensee especially when there are 14 pages of felonies on the Public Records of
Desoto County along with a barrage of bad publicity. See Exhibit "U".

303. The Plaintiffs unable to survive the vicious negative publicity, costly
investigations, criminal defenses, slander of credit, and reputation and baseless
destruction of Plaintiffs name reputation, loss of business, escalating health problems and
mental suffering and forced all of the Plaintiffs into the final stage of financial ruin.

304. Defendant Ken Kohn knew that the fabricated lies about the Plaintiffs were
so lacking in any indicia of probable cause as to realistically render a legitimate belief of

80

the existence of any authenticated violation, totally unreasonable for any probable cause

or to shield immunity but Ken Kohn sends these fabricated violation reports and

complaints to Rick Cantrell as legitimate with instructions to take immediate action and

falsely prosecute the Plaintiffs and Rick Camtrell did just that, falsely arrested Clark and

threatened Callaway with arrest if she didn't immediately get rid of Plaintiff Delaet and

the Bankruptcy estate and Plans vehicles or be arrested just like Clark but on 600 plus

charges. A perfect plan executed by the Desoto County slick talkers who were aided and

assisted by the State boys Ken Kohn and Rick Camtrell to further circumvent Plaintiff

Deleat's Bankruptcy. With the aid of the state funded agency boys the Desoto County

boys did circumvent the bankruptcy. The Desoto County Defendants are the slickest, poor

mouth big talkers ever to breath and no doubt they lured and enticed Ken Kohn boosting

and telling him that he was immune from prosecution and bullet proof from civil

litigation and how Desoto County Government and Lester Hornbake, Craig Coffee, and

Jorge Hernandez really needs their help for a problem with citizens that just wouldn't go

away with out a push.

305. All of the named Defendants to this Count knew that the result of the overt

actions in furtherance of their conspiracy, would be severe mental and emotional distress,

suffering , humiliation and physical and monetary damages to the Plaintiffs.

306. Defendant Rick Camtrell knew all along of the conspiracy that he chose to

enter into, that the complaints he received from the alias alter ego Jimmy Dees were from

Jorge Hernandez, Craig Coffee, Lester Hornbake and the Desoto County Government and

that the conspiracy was made for the purpose of circumventing Plaintiff K. A. Delaet's

81

Bankruptcy. He was privy to the fact that the complaints were not true or authentic. Rick Camtrell was told by Ken Kohn from the SWFWMD that the complaints and reports were actually coming from the Desoto County Code Enforcement and Coffee, Hernandez, and Hornbake and that the reports and complaints were fabricated to enlist the DEP to use their state funded agency to maliciously prosecute un-cooperative citizens from Desoto County, that had Desoto County in a legal bind.

307. More threats of arrest and intimidation, threats of more multiple criminal charges by the DEP and Desoto County prompted by Coffee, Hernandez and Kohn caused Callaway and Delaet to immediately liquidate and literally pay to get rid of 600 repossessed or floor planned vehicles from all of the Desoto County properties. These vehicles had a value of $1000 to $5,000 each and were pledged to the Court Ordered Bankruptcy Plan car lot sales business that was being operated to pay Delaet's Bankruptcy creditors.

308. Plaintiffs were publicly humiliated, falsely brought into public scandal damaging their reputations in the community and with business associates. Plaintiffs were subjected to severe mental, emotional and physical pain and suffering as well as financial ruin.

309. Conspiracy under Florida State law is a well settled law and one that none of the named Defendants have any claims to any State protected or qualified immunities. The Defendants have no job responsibilities that in this count remotely apply to them choosing to willfully and maliciously violate this Florida Statute.

310. As a direct and proximate result of the named Defendants overt acts of the

82

conspiracy the Plaintiffs were subjected to severe damages mentally, physically and monetarily and these damages are continuing.

311. Plaintiff Clark could no longer qualify for the surety bond necessary for the State of Florida Dealer license because of the criminal record manufactured by Coffee and Hernandez's false complaint. These criminal charges are now a part of Clark's permanent criminal record and the bonding company will not re-issue the bond for Clark's daughter's corporation, based upon the criminal charges on the public records. Plaintiffs have incurred excessive costs attempting to off set the overt actions of all these conspirators.

312. Lester Hornbake caused false and fabricated complaints to be made to the DBPR causing damages to the Plaintiffs.

313. The wrongful acts in furtherance of this conspiracy was initiated by all the Defendants to wrongfully and illegally disrupt and destroy Plaintiffs business relations and lease by falsely defaming Plaintiffs and committing a variety of illegal overt acts in furtherance of the defendants' conspiracy to damage plaintiffs.

314. The conduct of the Defendants rendered Plaintiffs unable to survive the negative publicity, costly investigations, criminal defenses and baseless destruction of Plaintiffs name and reputation, loss of business and forced Plaintiffs into financial ruin.

315. Defendants Kimberly Routt and Sandra Green also knowingly made false administrative reports about the Plaintiffs with the DBPR as a protective measure to cover her actions which damaged the Plaintiffs mentally and monetarily, by the damage to Plaintiffs property and also resulting from prohibiting a new tenant from opening a new

83

business at the 3172 SW Highway 17 location the subject property of the illegal Desoto County stop work order.

316. Defendants Sandra Green and Kimberly Routt in an attempt to cover up the damage caused to Plaintiffs by knowingly fabricating and making false statements and knowingly made a false complaint about Plaintiffs and made a separate false report with the probable cause panel of the State of Florida DBPR.

317. Defendants Routt and Green in an effort to have the Plaintiffs criminally prosecuted also knowingly made false statements about Clark and Callaway with the state attorney seeking criminal prosecution just like what occurred with the DEP in the arrest of Clark.

318. All of the named Defendants to this Count knew, that the result of the overt actions in furtherance of their conspiracy, would be severe mental and emotional stress, suffering, humiliation and physical damage to the Plaintiffs.

319. Plaintiffs intend to hire an attorney to plead this matter at a jury trial and will be obligated to pay for their services.

WHEREFORE Plaintiffs demand judgment against Craig Coffee in his official capacity, Lester Hornbake in his official capacity and Jorge Hernandez in his official capacity, for the maximum allowed by the state for tort claims of this nature plus all costs and attorney fees pursuant to 42 USC § 1988 and demand judgment from the individual named Defendants, Hernandez, Hornbake, Coffee, South, Routt, Green, Kohn and Camtrell jointly and severely for:

A. Compensation for mental emotional suffering, humiliation, degradation and

84

property damage in the amount of five million dollars for each Plaintiff.

B. Medical expenses, past present and future in the amount of five million dollars for each individual Plaintiff.

C. Loss of earnings and ability to earn in the future in the amount of five million dollars for each Plaintiff

D. Punitive damages five million dollars for each Plaintiff

E. Costs and attorney fees pursuant to 42 USC § 1988

F. Any other such relief deemed just and appropriate by a jury or the court.

## COUNT XIII
## DEFAMATION
### Of Name, Credit, Reputation, Business relations

320. This is a count for Defamation of name, credit, reputation and business relations against the Defendants Coffee in his official capacity, Coffee Individually, Hornbake in his official capacity and Hornbake Individually, Hernandez in his official capacity, Hernandez Individually, Green Individually, Routt Individually, South Individually, Kohn Individually and Camtrell Individually.

321. Plaintiffs re-allege and re-affirm paragraphs 1-13,16, 21 through 116 as if fully re-written herein.

322. Plaintiffs were publicly humiliated, falsely brought into public scandal damaging their reputations in the community and with business associates. Plaintiffs were subjected to severe mental and physical pain and suffering as well as financial ruin.

323. Coffee, Hernandez, Hornbake and Kohn contacted surrounding state agencies for the purpose of making false and fabricated complaints to cause Plaintiffs to

85

be falsely criminally prosecuted and cause them more damages to financially ruin them and wrecking their business relationships, leases and income at the same time.

324. Defendant Green knew that had gone way over the bounds of decency and their job duties.

325. These fabrications and lies were made by Green to cover her butt and was so lacking in indicia of probable cause as to realistically render a legitimate belief of it's existence, totally unreasonable for a probable cause panel or to shield immunity.

326. Defendant Green and Routt to aid and assist Lester Hornbake individually and officially as Desoto County government in creating and causing more damages to the Plaintiffs knowingly drafted, fabricated and filed false complaints and reports against Plaintiffs which further damaged the Plaintiffs mentally and monetarily. (Exhibits "2","4","7","8")

327. Defendant Green and Routt knew their underlying indicia for probable cause information was false because she along with co-conspirator Lester Hornbake individually and officially fabricated the entire story and complaints and made up false evidence to support their made up story through unscrupulous means.

328. Defendant Ken Kohn individually to aid and assist Lester Hornbake, Craig Coffee and Jorge Hernandez and Desoto County Government, he aided and abetted and assisted them in creating and causing more damages to Plaintiffs. Together they knowingly drafted and fabricated and willfully filed complaints and reports they knew to be false and untrue against the Plaintiffs which further damages the Plaintiffs mentally and monetarily.

86

329. Defendant Ken Kohn knew that his reports and complaints were false and fabricated with his assistance, he also knew he had gone over the bounds of any decency and over any resemblance of his job title and duties as a willful co-conspirator with Desoto County Defendant's Lester Hornbake, Craig Coffee and Jorge Hernandez and their alter ego Jimmy Dees. He choose to be a co-conspirator with this group of defendants.

330. Rick Camtrell without any resemblance of probable cause sent out his troops like the Calvary to falsely arrest Plaintiff Clark on fabricated false reports, threaten Callaway with arrest on 600 Plus felony charges if she did not immediately dispose of the bankruptcy estate property being the vehicles of Plaintiff Delaet's active bankruptcy plan property that was fully protected under 11 USC 362a the automatic stay.

331. Rick Camtrell's solution for Desoto County Government's problems with the Plaintiffs herein was to wrongfully send out his DEP officers, throw Clark in jail, making him pay a big cash bond on 16 counts and threaten Plaintiff Callaway with the same and much more of the same to force her and Clark to rethink their un-cooperative positions. Forcing the Plaintiffs to think about just who they were messing with, forget all about having any type of constitutional rights and due process rights. Rick Camtrell meant to show the Plaintiffs herein that he was "GOD" and Plaintiffs could kiss his ass and like it or see just how much they liked jail on fabricated charges. See Exhibit "U" 14 pages.

332. Defendant Rick Camtrell was solicited by Defendants Craig Coffee, Lester Hornbake, Jorge Hernandez and Ken Kohn to use his state agency color of law status to help out a co-state agency being the Desoto County Government without a shred of actual

87

probable cause but instead with pre meditated fabricated and false reports and complaints

333. Plaintiff Clark who had an unblemished reputation and record with the state of Florida DMV and bonding company to maintain his Daughter K. A. Delaet's state licenses, was given an instant criminal record of felonies courtesy of Rick Camtrell. In today's economy it does not take even that much for a company and the DMV to cull a licensee especially when there is are 14 pages of criminal arrests charges on the Public Records of Desoto County along with a barrage of bad publicity.  See Exhibit "U"

334. Defendant Ken Kohn knew that the fabricated lies about the Plaintiffs were so lacking in any indicia of probable cause as to realistically render a legitimate belief of the existence of any authenticated violation, totally unreasonable for any probable cause or to shield immunity but Ken Kohn sends these fabricated violation reports and complaints to Rick Cantrell as legitimate with instructions to take immediate action and falsely prosecute the Plaintiffs and Rick Camtrell did just that, falsely arrested Clark and threatened Callaway with arrest if she didn't immediately get rid of Plaintiff Delaet and the Bankruptcy estate and Plans vehicles or be arrested just like Clark but on 600 plus charges. A perfect plan executed by the Desoto County slick talkers who were aided and assisted by the State boys Ken Kohn and Rick Camtrell to further circumvent Plaintiff Delaet's Bankruptcy. With the aid of the state funded agency boys the Desoto County boys did circumvent the bankruptcy. The Desoto County Defendants are the slickest, poor mouth big talkers ever to breath and no doubt they lured and enticed Ken Kohn boosting and telling him that he was immune from prosecution and bullet proof from civil litigation and how Desoto County Government and Lester Hornbake, Craig Coffee, and

88

Jorge Hernandez really needs their help for a problem with citizens that just wouldn't go away with out a push.

335. All of the named Defendants to this Count knew, that the result of the overt actions in furtherance of their conspiracy, would be severe mental and emotional stress, suffering, humiliation and physical damage to the Plaintiffs.

336. Defendant Rick Camtrell knew all along of the conspiracy that he chose to enter into, that the complaints he received from the alias alter ego Jimmy Dees were from Jorge Hernandez, Craig Coffee, Lester Hornbake and the Desoto County Government and that the conspiracy was made for the purpose of circumventing Plaintiff K. A. Delaet's Bankruptcy. He was privy to the fact that the complaints were not true or authentic. Rick Camtrell was told by Ken Kohn from the SWFWMD that the complaints and reports

337. Defamation under Florida State law is a well settled law and one that none of the named Defendants have any claims to any State protected or qualified immunities. The Defendants have no job responsibilities that in this count remotely apply to them choosing to willfully and maliciously violate this Florida Statute.

338. Plaintiff Clark could no longer qualify for the surety bond necessary for the State of Florida Dealer license because of the criminal record manufactured by Coffee and Hernandez's false complaint. These criminal charges are now a part of Clark's permanent criminal record and the bonding company will not re-issue the bond for Clark's daughter's corporation, based upon the criminal charges on the public records. Plaintiffs have incurred excessive costs attempting to off set the overt actions of all these conspirators.

89

339. Lester Hornbake caused false and fabricated complaints to be made to the DBPR causing damages to the Plaintiffs.

340. The wrongful acts in furtherance of this conspiracy was initiated by all the Defendants to wrongfully and illegally disrupt and destroy Plaintiffs business relations and lease by falsely defaming Plaintiffs and committing a variety of illegal overt acts in furtherance of the defendants' conspiracy to damage plaintiffs.

341. Defendants Kimberly Routt and Sandra Green also knowingly made false administrative reports about the Plaintiffs with the DBPR as a protective measure to cover her actions which damaged the Plaintiffs mentally and monetarily, by the damage to Plaintiffs property and also resulting from prohibiting a new tenant from opening a new business at the 3172 SW Highway 17 location the subject property of the illegal Desoto County stop work order.

342. Defendants Sandra Green and Kimberly Routt in an attempt to cover up the damage caused to Plaintiffs by knowingly fabricating and making false statements and knowingly made a false complaint about Plaintiffs and made a separate false report with the probable cause panel of the State of Florida DBPR.

343. Defendants Routt and Green in an effort to have the Plaintiffs criminally prosecuted also knowingly made false statements about Clark and Callaway with the state attorney seeking criminal prosecution just like what occurred with the DEP in the arrest of Clark. This would be let another costly incident for the Plaintiffs to overcome as another malicious prosecution conspiracy.

344. As a direct and proximate result of the aforesaid libelous, defamatory

90

statements made issued and or published and or caused to be issued and or published by these named Defendants in this Count have caused Plaintiffs to suffer damage and continue to suffer damage to their good name, credit and business relations.

345. Plaintiffs intend to hire an attorney to plead this matter at a jury trial and will be obligated to pay for their services.

WHEREFORE Plaintiffs demand judgment against Jorge Hernandez in his official capacity and Lester Hornbake in his official capacity, for the maximum allowed by the state for torts of this nature plus all costs and attorney fees pursuant to 42 USC § 1988 for each named Plaintiff and demand judgment from the individual named Defendants, Hernandez, Hornbake, Green, Routt, South, Kohn and Camtrell jointly and severely for:

A. Compensation for mental emotional suffering, humiliation, degradation and property damage in the amount of five million dollars for each named Plaintiff.

B. Medical expenses, past present and future in the amount of five million dollars for each named plaintiff.

C. Loss of earnings and ability to earn in the future in the amount of five million dollars for each named plaintiff

D. Punitive damages five million dollars for each named plaintiff

E. Costs and attorney fees pursuant to 42 USC § 1988

F. Any other such relief deemed just and appropriate by a jury or the court.

91

## COUNT XIV
## LIBEL PER SE

346. This is an action for libel per se against the Defendants Coffee in his official capacity, Coffee Individually, Hornbake in his official capacity and Hornbake Individually, Hernandez in his official capacity, Hernandez Individually, Green Individually, Routt Individually, South Individually, Kohn Individually and Camtrell Individually.

347. Plaintiffs Delaet, Clark and Callaway re-allege and re-affirm paragraphs 1 through 13, 14, 21 though 116 as if fully re-written herein.

348. All of the named Defendants to this Count intentionally made false libelous statements to deliberately subject the Plaintiffs to being maliciously criminally prosecuted and cause Plaintiffs economic damages.

349. The aforesaid libelous, and defamatory statements made, issued or caused to be made issued or published by those named defendants were done so to malice and injure the Plaintiffs mentally, physically and financially. (Exhibits "2","4","7","8")

350. Coffee, Hernandez, Hornbake and Kohn contacted surrounding state agencies for the purpose of making false and fabricated complaints to cause Plaintiffs to be falsely criminally prosecuted and cause them more damages to financially ruin them and wrecking their business relationships, leases and income at the same time.

351. Defendant Green knew that had gone way over the bounds of decency and their job duties and needed to cover her ass from her DBPR supervisors.

352. These fabrications and lies were made by Green to cover her but and was so

92

lacking in indicia of probable cause as to realistically render a legitimate belief of it's existence, totally unreasonable for a probable cause panel or to shield immunity.

353. Defendant Green and Routt to aid and assist Lester Hornbake individually and officially as Desoto County government in creating and causing more damages to the Plaintiffs knowingly drafted, fabricated and filed false complaints and reports against Plaintiffs which further damaged the Plaintiffs mentally and monetarily.

354. Defendant Green and Routt knew their underlying indicia for probable cause information was false because she along with co-conspirator Lester Hornbake individually and officially fabricated the entire story and complaints and made up false evidence to support their made up story through unscrupulous means.

355. Defendant Ken Kohn individually to aid and assist Lester Hornbake, Craig Coffee and Jorge Hernandez and Desoto County Government, he aided and abetted and assisted them in creating and causing more damages to Plaintiffs. Together they knowingly drafted and fabricated and willfully filed complaints and reports they knew to be false and untrue against the Plaintiffs which further damages the Plaintiffs mentally and monetarily.

356. Defendant Ken Kohn knew that his reports and complaints were false and fabricated with his assistance, he also knew he had gone over the bounds of any decency and over any resemblance of his job title and duties as a willful co-conspirator with Desoto County Defendant's Lester Hornbake, Craig Coffee and Jorge Hernandez and their alter ego Jimmy Dees. He choose to be a co-conspirator with this group of defendants.

93

357. Rick Camtrell without any resemblance of probable cause sent out his troops like the Calvary to falsely arrest Plaintiff Clark on fabricated false reports, threaten Callaway with arrest on 600 Plus felony charges if she did not immediately dispose of the bankruptcy estate property being the vehicles of Plaintiff Delaet's active bankruptcy plan property that was fully protected under 11 USC 362a the automatic stay.

358. Rick Camtrell's solution for Desoto County Government's problems with the Plaintiffs herein was to wrongfully send out his DEP officers, throw Clark in jail, making him pay a big cash bond on 16 counts and threaten Plaintiff Callaway with the same and much more of the same to force her and Clark to rethink their un-cooperative positions. Forcing the Plaintiffs to think about just who they were messing with, forget all about having any type of constitutional rights and due process rights. Rick Camtrell meant to show the Plaintiffs herein that he was "GOD" and Plaintiffs could kiss his ass and like it or see just how much they liked jail on fabricated charges. See Exhibit "U" 14 pages of charges and arrests.

359. Defendant Rick Camtrell was solicited by Defendants Craig Coffee, Lester Hornbake, Jorge Hernandez and Ken Kohn to use his state agency color of law status to help out a co-state agency being the Desoto County Government without a shred of actual probable cause but instead with pre meditated fabricated and false reports and complaints

360. Plaintiff Clark who had an unblemished reputation and record with the state of Florida DMV and bonding company to maintain his Daughter K. A. Delaet's state licenses, was given an instant criminal record of felonies courtesy of Rick Camtrell. In today's economy it does not take even that much for a company and the DMV to cull a

94

licensee especially when there is a whole page of felonies on the Public Records of Desoto County along with a barrage of bad publicity. See Exhibit "U" 14 pages of charges and arrests.

361. Defendant Ken Kohn knew that the fabricated lies about the Plaintiffs were so lacking in any indicia of probable cause as to realistically render a legitimate belief of the existence of any authenticated violation, totally unreasonable for any probable cause or to shield immunity but Ken Kohn sends these fabricated violation reports and complaints to Rick Cantrell as legitimate with instructions to take immediate action and falsely prosecute the Plaintiffs and Rick Camtrell did just that, falsely arrested Clark and threatened Callaway with arrest if she didn't immediately get rid of Plaintiff Delaet and the Bankruptcy estate and Plans vehicles or be arrested just like Clark but on 600 plus charges. A perfect plan executed by the Desoto County slick talkers who were aided and assisted by the State boys Ken Kohn and Rick Camtrell to further circumvent Plaintiff Delaet's Bankruptcy. With the aid of the state funded agency boys the Desoto County boys did circumvent the bankruptcy. The Desoto County Defendants are the slickest, poor mouth big talkers ever to breath and no doubt they lured and enticed Ken Kohn boosting and telling him that he was immune from prosecution and bullet proof from civil litigation and how Desoto County Government and Lester Hornbake, Craig Coffee, and Jorge Hernandez really needs their help for a problem with citizens that just wouldn't go away with out a push.

362. All of the named Defendants to this Count knew that the result of the overt actions in furtherance of their conspiracy, would be severe mental and emotional distress,

95

suffering , humiliation and physical and monetary damages to the Plaintiffs.

363. Defendant Rick Camtrell knew all along of the conspiracy that he chose to enter into, that the complaints he received from the alias alter ego Jimmy Dees were from Jorge Hernandez, Craig Coffee, Lester Hornbake and the Desoto County Government and that the conspiracy was made for the purpose of circumventing Plaintiff K. A. Delaet's Bankruptcy. He was privy to the fact that the complaints were not true or authentic. Rick Camtrell was told by Ken Kohn from the SWFWMD that the complaints and reports were actually coming from the Desoto County Code Enforcement and Coffee, Hernandez, and Hornbake and that the reports and complaints were fabricated to enlist the DEP to use their state funded agency to maliciously prosecute un-cooperative citizens from Desoto County, that had Desoto County in a legal bind.

364. More threats of arrest and intimidation, threats of more multiple criminal charges by the DEP and Desoto County prompted by Coffee, Hernandez and Kohn caused Callaway and Delaet to immediately liquidate and literally pay to get rid of 600 repossessed or floor planned vehicles from all of the Desoto County properties. These vehicles had a value of $1000 to $5,000 each and were pledged to the Court Ordered Bankruptcy Plan car lot sales business that was being operated to pay Delaet's Bankruptcy creditors.

365. Plaintiffs were publicly humiliated, falsely brought into public scandal damaging their reputations in the community and with business associates. Plaintiffs were subjected to severe mental, emotional and physical pain and suffering as well as financial ruin.

96

366. Libel per se under Florida State law is a well settled law and one that none of the named Defendants have any claims to any State protected or qualified immunities. The Defendants have no job responsibilities that in this count remotely apply to them choosing to willfully and maliciously violate this Florida Statute.

367. Plaintiff Clark could no longer qualify for the surety bond necessary for the State of Florida Dealer license because of the criminal record manufactured by Coffee and Hernandez's false complaint. These criminal charges are now a part of Clark's permanent criminal record and the bonding company will not re-issue the bond for Clark's daughter's corporation, based upon the criminal charges on the public records. Plaintiffs have incurred excessive costs attempting to off set the overt actions of all these conspirators.

368. Lester Hornbake caused false and fabricated complaints to be made to the DBPR causing damages to the Plaintiffs.

369. The wrongful acts in furtherance of this conspiracy was initiated by all the Defendants to wrongfully and illegally disrupt and destroy Plaintiffs business relations and lease by falsely defaming Plaintiffs and committing a variety of illegal overt acts in furtherance of the defendants' conspiracy to damage plaintiffs.

370. Defendants Kimberly Routt and Sandra Green also knowingly made false administrative reports about the Plaintiffs with the DBPR as a protective measure to cover her actions which damaged the Plaintiffs mentally and monetarily, by the damage to Plaintiffs property and also resulting from prohibiting a new tenant from opening a new business at the 3172 SW Highway 17 location the subject property of the illegal Desoto

97

County stop work order.

371. Defendants Sandra Green and Kimberly Routt in an attempt to cover up the damage caused to Plaintiffs by knowingly fabricating and making false statements and knowingly made a false complaint about Plaintiffs and made a separate false report with the probable cause panel of the State of Florida DBPR.

372. Defendants Routt and Green in an effort to have the Plaintiffs criminally prosecuted also knowingly made false statements about Clark and Callaway with the state attorney seeking criminal prosecution just like what occurred with the DEP in the arrest of Clark.

373. The aforesaid libelous and defamatory statements made, issued or published and or caused to be made issued or published by the named defendants in this count attributed criminal conduct to the Plaintiffs which constitutes libel per se.

374. As a direct and proximate result of the aforesaid libelous, defamatory statements made issued and or published and or caused to be made issued and or published by these named Defendants in this Count have caused Plaintiffs to suffer damage and continue to suffer damage.

375. Plaintiffs intend to hire an attorney to plead this matter at a jury trial and will be obligated to pay for their services.

WHEREFORE Plaintiffs demand judgment against Craig Coffee in his official capacity, Jorge Hernandez in his official capacity and Lester Hornbake in his official capacity, for the maximum allowed by the state for torts of this nature plus all costs and attorney fees pursuant to 42 USC § 1988 for each named Plaintiff and demand judgment

98

from the individual named Defendants, Hornbake, Coffee, South, Routt, Green, Hernandez, Kohn and Camtrell jointly and severely for:

A. Compensation for mental emotional suffering, humiliation, degradation and property damage in the amount of five million dollars for each Plaintiff.

B. Medical expenses, past present and future in the amount of five million dollars for each individual Plaintiff.

C. Loss of earnings and ability to earn in the future in the amount of five million dollars for each plaintiff.

D. Punitive damages five million dollars for each named plaintiff.

E. Costs and attorney fees pursuant to 42 USC § 1988.

F. Any other such relief deemed just and appropriate by a jury or the court.

**COUNT XV**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

376. This is a count for intentional infliction of emotional distress against the Defendants Coffee in his official capacity, Coffee Individually, Hornbake in his official capacity and Hornbake Individually, Hernandez in his official capacity, Hernandez Individually, Green Individually, Routt Individually, South Individually, Kohn Individually and Camtrell Individually.

377. Plaintiffs re allege and re-affirm paragraphs 1-13, 15 and 21 through 116 as if fully re-written herein.

378. All of the named Defendants to this Counts conduct was deliberate and was performed in such a reckless and outrageous manner to cause mental and monetary

99

suffering upon all of the Plaintiffs.

379. At all times material to this lawsuit all of the named Defendants to this Count under color of law was deliberately violating all of the Plaintiffs clearly established constitutional rights under the 14th Amendment to the Constitution of the United States of America as plead in this complaint.

380. The conduct described herein was accomplished in bad faith with a malicious purpose and in a manner exhibiting a wanton, willful disregard for human rights, safety and property or otherwise acted outside the scope of their employment, that the governing immunity of Section 768.28 Florida Statutes does not apply.

381. Plaintiffs were publicly humiliated, falsely brought into public scandal damaging their reputations in the community and with business associates. Plaintiffs were subjected to severe mental and physical pain and suffering as well as financial ruin.

382. All of the named Defendants to this Count knew, that the result of the overt actions in furtherance of their conspiracy, would be severe ,mental and emotional stress, suffering, humiliation and physical damage to the Plaintiffs,

383. Coffee, Hernandez, Hornbake and Kohn contacted surrounding state agencies for the purpose of making false and fabricated complaints to cause Plaintiffs to be falsely criminally prosecuted and cause them more damages to financially ruin them and wrecking their business relationships, leases and income at the same time.

384. All of the named Defendants to this Count knew that they had gone way over the bounds of decency and their job duties.

385. Defendant Ken Kohn individually to aid and assist Lester Hornbake, Craig

Coffee and Jorge Hernandez and Desoto County Government, he aided and abetted and assisted them in creating and causing more damages to Plaintiffs. Together they knowingly drafted and fabricated and willfully filed complaints and reports they knew to be false and untrue against the Plaintiffs which further damages the Plaintiffs mentally and monetarily.

386. Rick Camtrell without any resemblance of probable cause sent out his troops like the Calvary to falsely arrest Plaintiff Clark on fabricated false reports, threaten Callaway with arrest on 600 Plus felony charges if she did not immediately dispose of the bankruptcy estate property being the vehicles of Plaintiff Delaet's active bankruptcy plan property that was fully protected under 11 USC 362a the automatic stay.

387. Rick Camtrell's solution for Desoto County Government's problems with the Plaintiffs herein was to wrongfully send out his DEP officers, throw Clark in jail, making him pay a big cash bond on 16 counts and threaten Plaintiff Callaway with the same and much more of the same to force her and Clark to rethink their un-cooperative positions. Forcing the Plaintiffs to think about just who they were messing with, forget all about having any type of constitutional rights and due process rights. Rick Camtrell meant to show the Plaintiffs herein that he was "GOD" and Plaintiffs could kiss his ass and like it or see just how much they liked jail on fabricated charges. See Exhibit "U" 14 pages of charges and arrests.

388. Plaintiff Clark who had an unblemished reputation and record with the state of Florida DMV and bonding company to maintain his Daughter K. A. Delaet's state licenses, was given an instant criminal record of felonies courtesy of Rick Camtrell. In

101

today's economy it does not take even that much for a company and the DMV to cull a licensee especially when there are 14 pages of criminal charges and arrests on the Public Records of Desoto County along with a barrage of bad publicity. See Exhibit "U" 14 pages of charges and arrests.

389. Plaintiff Delaet's Dirt Cheap Enterprises Business would have been open if Sandra Green had not illegally interfered and Plaintiff estimates a loss of $500.00 for every day her business is un-open as a result of a deficient illegal stop work order.

390. Defendant Sandra Green has no right or job duty to come onto an owner permitted job site of the Plaintiffs, Florid Statues 489.103(7) (Exhibit "6") states "Owners of property when acting as their own contractor and providing direct, onsite supervision themselves of all work not performed by license contractors." This is what the Plaintiff are and have done all the work themselves and have no other contractors or workers and demand strict proof of the contrary like pay records, names addresses, phone numbers, etc.

391. Plaintiff Clark could no longer qualify for the surety bond necessary for the State of Florida Dealer license because of the criminal record manufactured by Coffee and Hernandez's false complaint. These criminal charges are now a part of Clark's permanent criminal record and the bonding company will not re-issue the bond for Clark's daughter's corporation, based upon the criminal charges on the public records. Plaintiffs have incurred excessive costs attempting to off set the overt actions of all these conspirators.

392. The wrongful acts in furtherance of this conspiracy was initiated by all the

102

Defendants to wrongfully and illegally disrupt and destroy Plaintiffs business relations

and lease by falsely defaming Plaintiffs and committing a variety of illegal overt acts in

furtherance of the defendants' conspiracy to damage plaintiffs.

393. Defendant Rick Camtrell individually chose to aid and assist Ken Kohn,

Lester Hornbake, Craig Coffee and Jorge Hernandez and Desoto County Government, he

aided and abetted and illegally and wrongfully assisted them in creating and causing more

damages to the Plaintiffs. Together they knowing draft and fabricated and willfully filed

complaints and repots they knew to be false and untrue against the Plaintiffs which

further damages the Plaintiffs mentally and monetarily.

394. There us no qualified immunity that exists where Defendants conduct

violated clearly established Federal Statutory or constitutional rights or those who

knowingly violate state and Federal law.

395. The state does not shield government actors who think they are bullet proof

from litigation and who willfully with the specific intent to violate their own policies and

procedures and join an overt conspiracy with co-state agency buddies and maliciously

commit fraud, knowingly fabricate and or assist in and accept what he knew was a false

and fabricated complaint and report to falsely defame and cause a citizen to be subjected

to wrongly and malicious prosecution civil and criminal. This is one of those cases where

government actors have no shield against claims made against them in their inadvisably

capacities.

396. The State of Florida goes only so far then the judicial immunity stops for

certain conduct and for those who knowingly go over and above their authority like

103

Defendant Ken Kohn has.

397. There are good and bad apples in all levels of government and state agencies, you hear the news daily and police officers are being arrested for child molestations, theft abusing their power and authority, The FBI more of the same and charges like fraud and perjury these officials all had immunity to carry out their discretionary job duties without the fear of personal liability but that immunity didn't apply or stand up when these bad apples began violating established laws, that's why the government and state provides exceptions to the immunity entitlement, to be able to rid the system of these bad apples and these exceptions apply in this case.

397. Plaintiff Clark after being subjected to enormous emotional distress from the Defendants named in this Count on March 15, 2006 had a severe life threatening heart failure and was immediately airlifted to Tampa General Hospital of emergency heart surgery.

398. All of the named Defendants knew in advance that their extreme, heightened, outrageous conduct and actions would cause the Plaintiffs to suffer severe emotional distress.

399. The Defendants actions described in this Count are so outrageous in character and so extreme in degree as to go far beyond all possible bounds of decency that it is regarded and described as being outrageous and utterly intolerable in a civilized society, especially from government officials acting under color of law that a citizen is taught to rely upon and respect. This case is one which recitation of the facts to a citizen of this community of these corrupt officials who have the limited legal distractive only

104

authority to delver or post notices has literally destroyed the Plaintiffs business relations,

name, reputation, mental and physical health and has literally nearly killed both Plaintiffs

Clark and Callaway, violating dozens of due process, state and Federal law requirements.

Putting Plaintiffs in financial ruin by their abuses of legal authority that a citizen would

arouse their resentment against these official lead them to exclaim " This conduct is

outrageous and atrocious!" Defendants outrageous abuse of legal authority is a heightened

degree of abuse and authority that applies to this Count.

400. Plaintiff Delaet has suffered emotional distress, suffering from chronic

depression, high blood pressure, panic attacks, migraine headaches and fatigue.

401. More emotional distress was inflicted on both Clark and Callaway on

11/29/07 when Clark was arrested and thrown in jail on the 16 criminal charges that were

solicited by Craig Coffee, and Jorge Hernandez. Both Plaintiffs were upset, humiliated by

the false arrest and distress from more threats of more false arrests to the point of

exhaustion, it sent Plaintiff Clark back to Tampa General for more life threatening heart

surgery. Both plaintiffs Clark and Callaway's emotional distress escalated into t personal

injury and permanent disabilities. Both Plaintiffs Clark and Callaway today are in need of

additional heart surgery because as a result of the stress.

402. As a direct and proximate result of the overt acts of all of the named

Defendants in this Count Plaintiffs have suffered severe damages.

403 .Plaintiffs intend to hire an attorney to plead this matter at a jury trial and will

be obligated to pay for their services.

WHEREFORE Plaintiffs demand judgment against Craig Coffee in his official

capacity, Jorge Hernandez in his official capacity, and Lester Hornbake in his official capacity for the maximum allowed by the state for torts of this nature plus all costs and attorney fees pursuant to 42 USC § 1988 for each named Plaintiff the individual named Defendants, Hornbake, Coffee, Hernandez, Green, Routt, South, Kohn and Camtrell jointly and severely for:

A. Compensation for mental emotional suffering, humiliation, degradation and property damage in the amount of one million dollars for each named Plaintiff.

B. Medical expenses, past present and future in the amount of five million dollars for each named  Plaintiff.

C. Loss of earnings and ability to earn in the future in the amount of five million dollars for each Plaintiff

D. Punitive damages five million dollars for each named Plaintiff

E. Costs and attorney fees pursuant to 42 USC § 1988

F. Any other such relief deemed just and appropriate by a jury or the court.

_____  
Noel Clark, Jr. Pro Se  
3128 SW Boll Weevil Rd.  
Arcadia, Florida 34266  
863-494-4805  

_____  
K. A. Delaet  
3806 SW 7th Place apt. 201  
Cape Coral, Florida 33914  

_____  
B. Lynn Callaway  
3128 SW Boll Weevil Rd.  
Arcadia, Florida 34266  
863-494-4805  

106



# ATTACHMENT(S)

# <u>NOT</u>

# SCANNED

__ Exceeds scanner's page limits
__ Physical exhibit prevents scanning
X Other:  Exhibits

# **PLEASE REFER TO COURT FILE**